STATE of Tennessee, Appellee,

v.

**Robert HOLLOMAN, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Feb. 19, 1992.

Permission to Appeal Denied by Supreme Court May 26, 1992.

**44**

C. Edward Fowlkes, Fowlkes, Duzane, Soloman & Associates, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, Clayburn L. Peeples, Dist. Atty. Gen. and Larry Hardister, Asst. Dist. Atty. Gen., Trenton, for appellee.

## OPINION

SUMMERS, Judge.

Appellant, Robert Holloman, presents this appeal as of right from two convictions for possession of cocaine with intent to sell or deliver. Appellant also challenges the two concurrent seven-year sentences imposed by the trial court. Finding no error, we affirm the judgment of the lower court in all respects.

The criminal charges levied against appellant arise from events taking place during an undercover drug investigation performed by the Tennessee Highway Patrol. Troopers Aaron Chism and Wayne Vasser set up an investigation in Humboldt, Tennessee, in an area known as the Crossing. As a means of disguise, the officers were selling watermelons out of a pickup truck. These men testified that while at the Crossing, they were approached by appellant's co-defendant, Moses Gaines. The subject of cocaine arose among these three men, and Gaines informed the undercover officers that he could obtain some cocaine. Chism and Vasser each gave two hundred and sixty dollars to Gaines for purposes of purchasing cocaine on their behalf. Approximately two hours and fifteen minutes later, Gaines returned with appellant who identified himself as "Shug." After the introductions, appellant delivered a package of cocaine to each of the men. At least part of this transaction was captured on video tape.

After the delivery of the cocaine, appellant informed the troopers that he would no longer sell at the Crossing because of certain rumors concerning law enforcement officials. He informed the officers that if they wanted to purchase more cocaine, they would have to call him at home. Appellant wrote his telephone number on a piece of paper and gave it to Trooper Chism. At a later date, the officers dialed the number on the piece of paper and asked to speak to Shug. When Shug came to the phone, he and Trooper Vasser discussed the possibility of another cocaine transaction. This conversation was recorded on a cassette tape and was played at trial.

Trooper Chism and Trooper Vasser both identified appellant as the man with whom they had conducted the cocaine transaction on May 3, 1989. They also identified the voice from the taped telephone conversation as belonging to appellant.

Appellant's proof consisted of three witnesses who testified that they had known appellant for an extensive period of time and had never known appellant to be called Shug. The three witnesses also testified that the voice on the tape recording was not appellant's voice.

Appellant presents the following issues for our review:

I. Did the trial court err in refusing to dismiss the indictment?

II. Did the trial court improperly find that the state had established a chain of custody of the cocaine in question?

III. Was the evidence presented at trial sufficient to sustain the jury's verdicts of guilty?

IV. Were the sentences entered by the trial court excessive?

### I.

 Three legal arguments are presented by the appellant to support his conten-

tion that the trial court should have dismissed the indictment in this case. First, appellant contends that the indictment should have been dismissed because, rather than using his proper name, the indictment lists the offender as "John Doe a/k/a Shug." The law allows this type of styling. T.C.A. § 40–13–203 provides:

> The indictment must be certain as to the person charged; but when his name is unknown to the grand jury, it may be so alleged without further identification, or he may be indicted under any name by which he is generally known.

As stated in *Banks v. State*, 556 S.W.2d 88 (Tenn.Crim.App.1977), where there is no proof that the accused has used an alias, no alias should be used on the indictment. However, proof of the use of an alias supports its inclusion on the indictment. *Id.; Young v. State*, 566 S.W.2d 895 (Tenn. Crim.App.1978).

■ Two state witnesses testified that appellant used "Shug" as an alias during the alleged transactions. Three witnesses presented by the defense testified that no such alias had ever been used by appellant. In *Banks v. State*, "the State made a good faith effort to prove the use of an alias...." *Id.* 556 S.W.2d at 90. As in *Banks*, we find that in this case any such error is harmless because of the good faith efforts of the prosecution.

■ The second argument forwarded by appellant to support his contention that the indictment should have been dismissed is that a fatal variance existed between the indictment and the proof at trial. Before a variance will be held to be fatal, the variance must be deemed material and prejudicial. *State v. Moss*, 662 S.W.2d 590 (Tenn.1984). A material variance will not be found where the allegations and proof substantially correspond. Furthermore, a variance is not fatal unless it is of a character which could have misled the accused at trial or deprived the defendant of his right to be protected against another prosecution for the same offense. *Id.* at 592.

■ The alleged variance in this case refers to the fact that the indictment listed the offender as "John Doe a/k/a Shug." Following the standard announced in the Supreme Court case of *State v. Moss*, the indictment clearly informed appellant of the charges against him. We do not believe a material and prejudicial variance existed in this case.

Finally, appellant contends that the indictment should have been dismissed for failing to state "against the peace and dignity of the State" after each count in the indictment. This required language is found in Article VI, Section 12 of the Tennessee Constitution and T.C.A. § 40–13–201. In the instant eight-count indictment, the phrase "against the peace and dignity of the State of Tennessee" was included at the end of counts four and eight only. Citing *Usary v. State*, 172 Tenn. 305, 112 S.W.2d 7 (1937), appellant maintains that each count of an indictment is in essence a separate indictment and must contain all of the averments necessary to constitute the charged offense. Appellant was convicted of counts one and five, and these counts do not include the above-quoted language.

■ Substantial compliance with the requirement that an indictment conclude with the words "against the peace and dignity of the State" is sufficient. *Burton v. State*, 214 Tenn. 9, 377 S.W.2d 900 (1964). The early case of *Rice v. State*, 50 Tenn. 215 (1871) contains language which is of assistance in this case.

> An indictment in this State, that does not conclude "against the peace and dignity of the State," is a nullity. It is a positive injunction of the Constitution itself, that such shall be the conclusion of every indictment. It is, therefore, a matter that can not be affected by legislation, and a defect that cannot be ignored by the courts.

> \* \* \* \* \* \*

> It is held that each count in an indictment must be a complete indictment in itself. This, we think, refers to the description of the offense, and not to the formal conclusion. And it seems that the good and bad counts may, by apt refer-

ence and averment, become so incorporated in each other, that the principal count in the matter borrowed for the other, may constitute together a complete accusation.... The count of the indictment now in judgment, which charges the larceny does not conclude "against the peace and dignity of the State," and if stood alone, would be bad for want of the proper conclusion. *But the last count does have the proper conclusion; and we hold this to be sufficient, and that the conclusion "against the peace and dignity of the State" in the last count relates to all other preceding counts.*

*Id.* at 220–222 (Emphasis added).

■ The indictment in question contains the required language in the last count of the indictment as well as the fourth count in the indictment. Accordingly, the state has substantially complied with Article VI, Section 12 of the Tennessee Constitution and T.C.A. § 40–13–201 in its preparation of the indictment in this case.

Appellant's contention that the trial court erred in refusing to dismiss the indictment is without merit.

## II.

Appellant contends that the trial judge erred in allowing the cocaine purchased by Trooper Chism to be admitted into evidence. The essence of his complaint is that the state did not establish the proper chain of custody of the evidence.

■ In order to admit physical evidence the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. *Bolen v. State,* 544 S.W.2d 918 (Tenn.Crim.App. 1976). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. *Wade v. State,* 529 S.W.2d 739

(Tenn.Crim.App.1975). The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. The circumstances must establish a reasonable assurance of the identity of the evidence. *Ritter v. State,* 3 Tenn.Crim.App. 372, 462 S.W.2d 247 (1970).

■ In meeting its burden of establishing the chain of custody for the cocaine in this case, the state offered the following proof:

1. On May 3, 1989, Trooper Aaron Chism purchased a quantity of cocaine from the appellant. Chism gave the cocaine to Martina Crosby at the Tennessee Bureau of Investigation Crime Laboratory.

2. On May 15, 1990, Martina Crosby performed tests on the contents of the package given to her by Trooper Chism. Crosby gave the package to Trooper Jim Powers on May 30, 1990.

3. Trooper Chism received the package in question from Trooper Powers on a subsequent date.

Appellant insists that the chain of custody was not established because Trooper Jim Powers did not testify at trial. This Court has previously noted that the important links in the chain of custody in drug cases are those between the time of the seizure and the time the test is performed. Appellant does not dispute that the state proved that the chain was unbroken during that time, and the trial judge properly admitted the results of the test. Furthermore, we believe the chain of custody was also established to the time of trial. Although Trooper Powers was unavailable to testify, his link in the chain was sufficiently established through the testimony of Ms. Crosby and Trooper Chism.

In holding that the evidence should be admitted, the trial court made the following statement:

It's [the bag of cocaine] sealed on both ends where the Trooper had it originally sealed at the top and where the lab has sealed it back at the bottom and since this officer [Trooper Powers] is still

working undercover, it might be inappropriate to bring him in to testify even if he were here. It appears that no prejudice attaches to either defendant. It appears that the chain of custody is substantially intact and for [that] reason, I'm going to allow the admission of Exhibits I and II previously marked for identification into evidence and I'll note your strenuous objection.

We are unable to hold that the trial court abused its discretion in admitting the evidence. Accordingly, this issue is without merit.

### III.

■ Appellant challenges the legal sufficiency of the evidence of his guilt. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn. 1983). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the defendant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The defendant has the burden of overcoming this presumption of guilt. *Id.*

■ Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); Rule 13(e), T.R.A.P. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984).

*Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim. App.1978).

■ We have already set forth the relevant facts in this case. Viewing the facts in a light most favorable to the state, we believe that a rational trier of fact could have found appellant guilty beyond a reasonable doubt. Therefore, this issue is without merit.

### IV.

■ The last argument presented by appellant is that the sentences imposed by the trial court are excessive. Appellant was sentenced to seven years on each count, and the two sentences were ordered to be served concurrently. Appellant argues that he is entitled to a sentence of four years which is the presumptive minimum sentence in this case. As rationale for his conclusion, appellant contends that the following mitigating factors demand such a result: (1) there was no bodily harm to any victim; (2) appellant has maintained regular employment; and (3) appellant has no history of alcohol abuse. Appellant further offers that he has "been in no trouble since 1981."

Appellant has a lengthy criminal history, including a heroin conviction, which is reflected on his presentence report. The criminal charges on his presentence report include various misdemeanors and felonies. In 1980 he was charged with first degree murder and was convicted of murder in the second degree pursuant to a negotiated plea. Appellant's statement in his brief that he has "been in no trouble since 1981" is inaccurate. Admittedly, he has had no convictions since that time. But he has been charged with shoplifting, carrying a concealed weapon, aggravated assault, receiving and concealing stolen property, and carrying a deadly weapon with intent to go armed. Some of these charges were dismissed, and some were pending at the time of the sentencing hearing. We note that the state attempted to prosecute appellant as a Range II offender, but the trial court held that the state's enhancement notice

was not timely. The trial court sentenced appellant as a Range I standard offender. Appellant has failed to overcome the presumption of correctness of the trial court's sentence. We believe the sentences entered were proper.

## CONCLUSION

After a careful review of the record and the briefs of the respective parties, we are unable to find any reversible error. Accordingly, appellant's convictions and sentences are affirmed.

BIRCH and WADE, JJ., concur.