IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1997



FILED

March 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9604-CC-00167 |
| | ) | |
| Appellee, | ) | |
| | ) | HAMBLEN COUNTY |
| VS. | ) | |
| | ) | HON. JAMES EDWARD BECKNER |
| EDDIE L. HOWARD, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Sale of ½ gram or |
| | ) | more of Cocaine) |

FOR THE APPELLANT:

PAUL G. WHETSTONE, P.C.
502 North Jackson Street
Morristown, TN  37814

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
425 Fifth Avenue N.
Nashville, TN  37243

C. BERKELEY BELL
District Attorney General

JOHN DUGGER
Assistant District Attorney
510 Alliston St.
Morristown, TN  37814

OPINION FILED _____

AFFIRMED; SENTENCE MODIFIED

JERRY L. SMITH, JUDGE

# OPINION

On November 29, 1995, a Hamblen County jury convicted Appellant Eddie L. Howard, Jr., of four counts of selling .5 or more grams of a Schedule II controlled substance. After a sentencing hearing on the same day, the trial court imposed a sentence of nine years for each conviction, with two of the sentences to be served consecutively. Appellant challenges both his convictions and his sentences, raising the following issues:

> 1) whether the State established a proper chain of custody for the cocaine that was introduced into evidence;
> 2) whether the trial court erred when it admitted audio tapes, video tapes, and transcripts into evidence;
> 3) whether the trial court erred when it failed to include certain jurors in Appellant's venire;
> 4) whether the referral to Appellant as a "dealer" by a witness for the State prejudiced Appellant to the extent that he did not receive a fair trial;
> 5) whether the trial court imposed excessive sentences; and
> 6) whether the trial court erred when it ordered two of the sentences to run consecutively.

After a review of the record, we affirm the judgment of the trial court but modify the sentences to run concurrently

## I. FACTS

Detective Wayne Mize of the Morristown, Tennessee Police Department testified that on April 21, April 24, April 26, and May 5, 1995, he and some other police officers made audio and video recordings of transactions in which Appellant sold cocaine base to police informant Connie Cervino during an undercover operation. Mize testified that before each of the four transactions, police officers would enter Cervino's apartment, give Cervino $200.00, and then set up and turn on audio and video recording devices. The officers would then

position themselves outside of Cervino's apartment in order to photograph Appellant as he entered and exited the apartment. When the officers left the apartment, Cervino would call Appellant and ask him to deliver cocaine to her apartment. When Appellant arrived, he would put the cocaine on the coffee table and Cervino would pay him $200.00. After Appellant left the apartment, the officers would wait for five to ten minutes and then would reenter the apartment. Either Detective Mize or Officer Dan Cox would then take possession of the cocaine. The officers would then turn off the recording devices.

## II. CHAIN OF CUSTODY

Appellant contends that the trial court should have granted his motion for judgment of acquittal because the State failed to establish a proper chain of custody for the cocaine that was introduced into evidence. Specifically, Appellant claims that a proper chain of custody was not established because the proof shows that Cervino had "multiple opportunities" to "tamper with [the] evidence in any manner [that] she pleased" before the police officers took possession of it. We disagree.

Before tangible evidence may be introduced, the party offering the evidence must either call a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holloman, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992). However, "[t]he identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded." Id. Rather, "[i]t is sufficient if the facts establish a reasonable assurance of the identity of the evidence." State v. Woods, 806 S.W.2d 205, 212

(Tenn. Crim. App. 1990). "Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion." Holloman, 835 S.W.2d at 46.

Appellant does not challenge the chain of custody for the cocaine after the time that Detective Mize and Officer Cox took possession of it. Instead, Appellant contends that the chain of custody was not established because Cervino did not testify at trial and because the video tapes of the four transactions show that Cervino had multiple opportunities to tamper with the cocaine before Mize and Cox took possession of it. We have reviewed the four video tapes, and we could see no instance in which Cervino appeared to tamper with the evidence. Although Cervino did not testify at trial, her link in the chain was sufficiently established by the video and audio tapes, the testimony of Detective Mize, and the testimony of Officer Cox. See id. (stating that unavailable witness' link in the chain was sufficiently established by testimony of other witnesses). This issue has no merit.

### III. ADMISSIBILITY OF TAPES AND TRANSCRIPTS

Appellant contends that the trial court erred when it admitted the audio tapes, video tapes, and transcripts into evidence. Specifically, Appellant argues that because the tapes and transcripts contain statements made by Cervino and Cervino did not testify at trial, admission of this evidence violated his right to

confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution.[1]  We disagree.

In State v. Jones, 598 S.W.2d 209, 223 (Tenn. 1980), the Tennessee Supreme Court held that an accused's constitutional right to confront the witnesses against him was not violated by the introduction of audio taped conversations between the accused and an informant who did not testify at trial. The supreme court stated that

> tape recordings and compared transcripts are admissible and may be presented in evidence by any witness who was present during their recording or who monitored the conversations, if he was so situated and circumstanced that he was in a position to identify the declarant with certainty, and provided his testimony in whole, or in part, comports with other rules of evidence.

Jones, 598 S.W.2d at 223.

In this case, Detective Mize testified that he could identify Appellant and Cervino in all four video tapes.  Mize also testified that he had monitored the audio recording of the transactions on April 24, April 26, and May 5 while they were occurring and he had reviewed the transcripts of those recordings and determined that they were accurate. In addition, Officer Cox testified that he had monitored the audio recording on April 21 and he had reviewed the transcript and determined that it was accurate.  Further, Officer Rick Harmon testified that he photographed Appellant when he entered and exited Cervino's apartment on all four occasions and he identified Appellant in the photographs.  Only after this

---

[1]The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI.  Similarly, Article I, Section 9 provides "[t]hat in all criminal prosecutions, the accused hath the right to . . . meet the witnesses face to face."  Tenn. Const. art I, § 9.

testimony was given were the jurors allowed to listen to portions of the audio tapes while they simultaneously watched the soundless video tapes of the four transactions. We conclude that this procedure satisfied the requirements set forth in Jones. Moreover, Cervino's statements were not offered or intended to be substantive evidence. Indeed, Cervino's statements are completely insignificant except to the extent that they put Appellant's recorded statements in context. In effect, Cervino was simply not a "witness against" Appellant, and thus, the right to confrontation is not implicated. See State v. George Harless, No. 03C01-9203-CR-00105, 1993 WL 305786, at *3 (Tenn. Crim. App., Knoxville, Dec. 6, 1993). Appellant's right to confrontation was fully satisfied by his thorough cross-examination of Detective Mize, Officer Cox, and Officer Harmon. See id. This issue has no merit.

## IV. JURY SELECTION

Appellant contends that the trial court erred when it denied his motion to have jury panel one included in his venire. Specifically, Appellant argues that because he is African-American and panel one was the only panel that included African-American members, the trial court's failure to purposefully include panel one in Appellant's venire deprived him of his right under Article I, Section 8 of the Tennessee Constitution[2] to be tried by a jury of his peers. We disagree.

The record indicates that when Appellant made his rather unique motion, the trial court stated that to purposefully include the panel containing African-

_____

[2]Article I, Section 8 provides "[t]hat no man shall be taken or imprisoned . . . but by the judgment of his peers." Tenn. Const. art I, § 8.

Americans would be just as bad as to purposefully exclude the panel. Thus, the trial court concluded that the better practice would be to put the numbers of all perspective jury panels in a box and then have the clerk draw the numbers at random. Jury panel one was not selected.

We conclude that the trial court's procedure in selecting the jury in this case did not violate Appellant's right to be tried by a jury of his peers in any way whatsoever. Indeed, Tennessee courts have repeatedly held that although "juries must be drawn from a source fairly representative of the community[,] we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." State v. Nelson, 603 S.W.2d 158, 160 (Tenn. Crim. App. 1980) (quoting Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975)); see also Harvey v. State, 749 S.W.2d 478, 481 (Tenn. Crim. App. 1987). In short, there is no constitutional guarantee requiring a defendant be tried by a jury wholly or partially composed of individuals of his or her own race. Harvey, 749 S.W.2d at 481 (citing Wheeler v. State, 539 S.W.2d 812 (Tenn. Crim. App. 1976)). This issue has no merit.

## V. IMPROPER COMMENT BY A STATE WITNESS

Appellant contends that he was prejudiced to the point that he did not receive a fair trial when Officer Harmon referred to Appellant as a "dealer" during his testimony. We disagree.

The record indicates that during the direct examination of Officer Harmon, the following colloquy occurred:

> [MR. DUGGER]: Approximately how long did [Appellant] stay in the apartment? You were outside watching him go in and out; how long did he stay?
> [OFFICER HARMON]: Just a couple minutes. Just like the rest of the dealers that we dealt with—
> MR. WHETSTONE: Objection, your Honor.
> THE COURT: Sustained. Be careful.

Harmon's statement was undoubtably improper. However, we conclude that Appellant is not entitled to a new trial because of it. In State v. Smith, 893 S.W.2d 908, 923 (Tenn. 1994), the Tennessee Supreme Court held that a witness' improper reference to the defendant's prior jail time did not entitle the defendant to a new trial because the trial court had given a curative instruction and in addition, the defendant could not have been prejudiced by the remark given the overwhelming proof of guilt. Similarly, in State v. Baker, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987), this Court held that a witness' improper reference to the accused's prior criminal record did not entitle the accused to a new trial because the trial court had given a curative instruction and further, the evidence in the record overwhelmingly established the guilt of the accused. Although these decisions were based in part on the giving of curative instructions by the trial courts, we note that Appellant failed to ask for a curative instruction in this case. Further, we note that Harmon's brief comment was not solicited by the State and it was not repeated. Moreover, given the overwhelming proof of Appellant's guilt that was presented at trial, any error was clearly harmless. See Tenn. R. App. P. 36(b) (stating that even if appropriate, relief shall not be granted "unless, considering the whole record, error involving a substantial right more probably than not affected the judgment"). This issue has no merit.

## VI. LENGTH OF SENTENCES

Appellant contends that the trial court erroneously sentenced him to a longer term than he deserves for each of his four convictions. We disagree.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1998); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id. Because the record in this case indicates that the trial court properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness.

In this case, Appellant was convicted of four counts of selling .5 or more grams of a Schedule II controlled substance, a Class B felony. See Tenn. Code

Ann. § 39-17-417(c)(1) (Supp. 1998). The sentence for a Range I offender convicted of a Class B felony is between eight and twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (1997). When both enhancement and mitigating factors are applicable to a sentence, the court is directed to begin with the minimum sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e) (1997).

In sentencing Appellant to a term of nine years for each conviction, the trial court determined that enhancement factor (1) applied because Appellant had a history of criminal convictions or behavior in addition to those necessary to establish the appropriate sentencing range. See Tenn. Code Ann. § 40-45-114(1) (1997). The trial court also determined that none of the enumerated mitigating factors of Tennessee Code Annotated section 40-35-113 applied.

Initially, Appellant contends that the trial court erred when it applied enhancement factor (1). We disagree. The record indicates that Appellant had previous convictions for driving without a driver's license in Tennessee and for retail theft in Illinois. Thus, the trial court properly applied this enhancement factor.

Appellant also contends that the trial court should have applied mitigating factor (1) because his criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1) (1997). However, this Court has held that this factor is inapplicable in cases involving the sale of cocaine. State v. Keel, 882 S.W.2d 410, 422 (Tenn. Crim. App. 1994). Even if this factor

had been applied, it would have been entitled to little weight. See State v. Hoyt Edward Carroll, No. 03C01-9607-CC-00254, 1997 WL 457490, at *4 (Tenn. Crim App., Knoxville, Aug. 12, 1997) (holding that in cases involving drugs, mitigating factor (1) is entitled to little weight).

Appellant further contends that the trial court should have applied mitigating factor (13) because he is the father of an infant son. See Tenn. Code Ann. § 40-35-113(13) (1997). We are unpersuaded that the mere fact that Appellant has fathered a child is entitled to any mitigating weight. See State v. John Allen Chapman, No. 01C01-9604-CC-00137, 1997 WL 602944, at *21 (Tenn. Crim. App., Nashville, Sept. 30, 1997) ("We find no nexus between paternityship and mitigation of punishment.").

In our de novo review, we hold that one enhancement factor and no mitigating factors apply to Appellant's sentences. Thus, we hold that a sentence of nine years for each of Appellant's convictions is entirely appropriate in this case.

## VII. CONSECUTIVE SENTENCING

Appellant contends that the trial court erred when it ordered two of his sentences to be served consecutively. On this issue we must agree with Appellant.

In general, consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997).[3]

In determining that two of Appellant's sentences should be served consecutively, the trial court found that Appellant is "a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood." The trial court stated that it based this finding on evidence that during the time period when the four offenses at issue in this case were committed, almost all of Appellant's income came from these four drug transactions.

---

[3]In State v. Wilkerson, 905 S.W.2d 933, 937–38 (Tenn. 1995), the Tennessee Supreme Court imposed two additional requirements for consecutive sentencing—the court must find that consecutive sentences are reasonably related to the severity of the offenses committed and that consecutive sentences are necessary to protect the public from further criminal conduct. At this time, it is unsettled whether Wilkerson applies to all seven of the statutory categories for consecutive sentencing or only the "dangerous offender" category. See State v. David Keith Lane, No. 03C01-9607-CC-00259, 1997 WL 332061, at *6 (Tenn. Crim. App., Knoxville, June 18, 1997), perm. app. granted, (Tenn. 1998). Our determination that consecutive sentences are not appropriate in this case is the same under either interpretation.

We conclude that the record simply does not support the trial court's finding that Appellant is "a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood." As previously stated, Appellant's prior criminal record consists only of one prior conviction for retail theft in Illinois and one or possibly two convictions for driving without a license in Tennessee. The record also indicates that in committing these offenses, Appellant merely obtained possession of a basketball and a batting glove. It goes without saying that these two items cannot be considered a major source of Appellant's livelihood by any stretch of the imagination. Further, there is absolutely no evidence in the record that Appellant has ever obtained anything of value through any other criminal offenses for which he was not convicted. The trial court apparently concluded that because Appellant was only earning $25–50 per week at his job, Appellant must have been obtaining his livelihood almost entirely through criminal activity. While this theory may well have been true, it remains only a theory because it was not supported by any evidence in the record. In short, we hold that the record does not support a finding that Appellant is a "professional criminal" such as to warrant consecutive sentences.

Accordingly, Appellant's sentences are modified to provide for concurrent sentencing for all four convictions in this case. In all other respects, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

-14-

_____
JOSEPH M. TIPTON, JUDGE


_____
THOMAS T. WOODALL, JUDGE