IN THE COURT OF CRIMINAL APPEALS OF
AT KNOXVILLE
OCTOBER SESSION, 1999

FILED

December 2, 1999

Cecil CROWS ON, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,　　　*

　　　*　　　No. 03C01-9811-CR-00420

　　Appellee,　　　*

　　　*　　　SULLIVAN COUNTY

vs.　　　*

　　　*　　　Hon. PHYLLIS H. MILLER, Judge

CECIL U. COBB, JR.,　　　*

　　　*　　　(Possession of Dihydrocodeinone,

　　Appellant.　　　*　　　a Schedule III controlled substance;

　　　*　　　simple possession of marijuana;

　　　*　　　failure to obey a traffic signal;

　　　*　　　driving under the influence of an

　　　*　　　intoxicant)

For the Appellant:

**Gerald L. Gulley, Jr.**
Contract Appellate Defender
P. O. Box 1708
Knoxville, TN 37901-1708

(APPEAL ONLY)

and

**Leslie S. Hale**
Office of the Public Defender
P. O. Box 839
Blountville, TN 37617

**Thomas McKinney**
Attorney at Law
222 E. Center Street
Kingsport, Tn 37660

(AT TRIAL)

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Marvin S. Blair, Jr.**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**H. Greeley Wells, Jr.**
District Attorney General

**Robert H. Montgomery**
Asst. District Attomey General
Blountville, TN 37617

OPINION FILED: _____

AFFIRMED

**David G. Hayes,** Judge

**OPINION**

The appellant, Cecil U. Cobb, Jr., was convicted by a Sullivan County jury of the misdemeanor offenses of possession of Dihydrocodeinone, a Schedule III controlled substance; simple possession of marijuana; failure to obey a traffic signal; and driving under the influence of an intoxicant.[1] The trial court imposed an effective sentence of twenty-three months, twenty-eight days.[2] On appeal, the appellant challenges the sufficiency of the evidence for each of his four convictions and the chain of custody related to the possession of the marijuana and Schedule III drugs.

After review, we affirm the judgment of the trial court.

**BACKGROUND**

Around 2:00 a.m. on May 30, 1997, Lieutenant Bob Abernathy of the Kingsport Police Department was dispatched to Ralph's Bar and Grill to investigate an activated security alarm. When the police called the restaurant to verify the alarm, a voice on the other end cursed them and hung up the telephone. The business owner, Ralph Barrett, was advised of the situation and met the lieutenant and two other officers at the scene. No visible signs of a burglary were observed, however, a white Chevrolet Cavalier was located in the parking lot.

Upon entering the building, Lieutenant Abernathy observed the appellant emerge from a room behind the bar. The lieutenant attempted to elicit the appellant's name to which the appellant responded "Stubby, 357." The officers noted the appellant's odor of alcohol, his bloodshot eyes, and his "uncooperative" nature. The appellant advised Barrett that he had been drinking. Barrett explained

---

[1]After the jury's guilty verdict for DUI was returned, the appellant pled guilty to DUI 4th offense.

[2]The trial court imposed the following sentences for each of the respective offenses: possession of dihydrocodeinone, eleven months and twenty-nine days; possession of marijuana, eleven months and twenty-nine days; and failure to obey a traffic signal, thirty days. These sentences were ordered to run concurrently. For the DUI fourth offense, the appellant received eleven months and twenty-nine days to be served consecutively to the above sentence of eleven months and twenty-nine days.

to the officers that the appellant was employed as a cook at the restaurant, that he had a key to the building, and that he had occasionally slept in the back room. Because Barrett permitted the appellant to remain in the restaurant and no other patrons were around, the officers did not remove the appellant from the premises even though he was obviously intoxicated. The officers instructed the appellant not to leave the building. Mr. Barrett stayed behind to speak further with the appellant.

Following the investigation of the alarm call, Kingsport Police Officer Rusty Wallace testified that he drove west, two tenths of a mile, on Stone Drive and pulled off the road into Trader's Village to fill out a report. A few minutes later, Officer Wallace observed a white car, which appeared to be the same car he had previously noticed in the parking lot at Ralph's Bar and Grill, traveling at approximately sixty-five to seventy mph in a fifty-five mph speed zone. Initiating pursuit, the officer observed the vehicle speed through a red light "at the intersection of the exit ramps from John B. Dennis and Stone Drive," without even touching the brakes. After barely negotiating the ramp, the appellant pulled over to the shoulder of the road. Upon approaching the vehicle, Officer Wallace recognized the driver as the person he had seen inside Ralph's Bar and Grill approximately fifteen minutes earlier.

The officer noticed the odor of alcohol and ordered the appellant out of the vehicle. The appellant admitted that he drank a couple of beers earlier. When asked to recite the alphabet, he stopped at the letter "G" and then said "and the rest

of them." He declined to perform any other field sobriety tests. At this point, the appellant was arrested and transported to the Kingsport City Jail.

At the jail, the appellant refused to sign an implied consent form. Officer Wallace delivered the appellant to the jailer, Mike Hickman, for booking. Upon searching the appellant, Officer Hickman found a "baggie" of marijuana and twelve pills wrapped separately in cellophane in the appellant's pants pocket. The twelve pills were of two different types: some were "oblong with specs on them" and some were "round." Laboratory tests from the TBI Crime lab later established that all twelve pills contained dihydrocodeinone, a Schedule III substance. The officer also

3

discovered two "rolled cigarette joints" of marijuana in the appellant's shirt pocket. After finding these items, Officer Hickman "took them straight to the arresting officer [Rusty Wallace]" in booking and advised the officer where he found them on the appellant. Officer Wallace testified that the items brought to him by Officer Hickman were two hand rolled marijuana cigarettes and some other pills of dihydrocodeinone wrapped in cellophane. Although Officer Hickman did not place any identifying marks upon the bag or drugs, he testified that he noted in the log book the articles found on the appellant.

If, at trial, any doubt remained as to the appellant's intoxication after the State's proof, it was removed during the defense proof by the testimony of the appellant and his employer, Barrett. Barrett testified that, after arriving at his restaurant, he entered and encountered the appellant:

> He was sitting in the middle of the restaurant at a table asleep, passed out, whatever you want to call it. . . .
> . . .
> There's no doubt, he was drunker than, he was drunk. . . . [O]ne of the officers] asked Stubby, . . . what his full name was, and Stubby said, 'Stubby.' . . . and that's all you fuckin' need to know.
> . . .
> After they left, I tried to get Stubby to let me take him home. He wouldn't listen. I tried to get him to go back there and lay down, stay all night. He wouldn't listen. I told him, I said, 'Stubby, if you leave here, they are going to get you. They're going to be sitting down the road waiting on you, and get you. I said, you better not leave here.' And he would not listen to me. He got his keys and went out the door. As he was going out the door, I was still begging him, I said, 'Stubby, please, don't leave, they'll get you tonight.' He left.

The appellant testified on his own behalf. He related that, after closing Ralph's Bar and Grill sometime after 12:00 midnight, he traveled with a friend to a local establishment known as the "Hog Wild." The appellant described the Hog Wild as a place to go dance and drink. The appellant informed the jury that, after arriving at the Hog Wild;

> I'd say I drank ten (10) or twelve (12) beers, maybe more. . . . I was pretty drunk, I don't remember leaving or anything.
> . . .
> I remember getting there, and I remember probably an hour, hour and a half after that, and I just lost my memory, I guess. I drank the beer pretty fast. I guess that's got a lot to do with it.

The appellant conceded that he could not deny that he ran a traffic light because he could not remember "driving the vehicle that night."

In reference to the charge of possession of a Schedule III drug, the appellant testified he had been prescribed Lortab, by Dr. Moore of Powell Valley Family Physicians, for pain. It was stipulated that Lortab contains the chemical substance hydrocodeinone. He related that he had surgery on both of his legs and, as a result, experiences constant pain. The appellant provided the court with a copy of his prescription dated February 10, 1997, for 7.5 milligrams of Lortab in the amount of 100 pills. He further testified that, at times, pursuant to his prescription he has possessed both the "brand name lortabs[,] and the generic kinds also." He testified that he normally carried these pills with him in a cellophane wrapper or plastic bag due to the fact that the plastic bottles are too cumbersome to fit in his pocket. He acknowledged that there have been occasions when he has "run out" of the prescribed medication. He denied having any marijuana or other illegal drugs in his possession, other than those medically prescribed to him. Although the appellant did acknowledge that the "oblong [pills] with the specs on them" were the prescribed hydrocodeinone, he denied any knowledge of the "round ones [pills]."

Following the court's instructions, the jury returned a verdict of guilty on all counts of the indictment.

## I. Sufficiency of the Evidence

The appellant challenges the sufficiency of the convicting evidence with regard to each conviction. The standard for appellate review on an evidentiary challenge is whether after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Tenn. R. App. P. 13(e). See also Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979).

### A. Possession of Dihydrocodeinone

The appellant argues the evidence of this conviction was insufficient based upon his prescription for dihydrocodeinone. Moreover, he contends that his conviction should be reversed because the validity of the prescription was stipulated by the State. The jury found the appellant guilty pursuant to Tenn. Code Ann. § 39-17-418(a) (1996 Supp.). In order to obtain a conviction under this statute, the State

5

must prove that the defendant "knowingly possessed . . . a controlled substance unless the substance was obtained *directly from*, or *pursuant to*, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a) (emphasis added).

Before examination of this issue, we note that the jury was improperly instructed that a valid prescription constituted a <u>defense</u> to the charged crime. A valid prescription constitutes neither an affirmative defense nor a general defense to the offense of simple possession of a controlled substance. <u>See</u> Tenn. Code Ann. § 39-11-204(a) (1991) ("[a]n affirmative defense in this title is so labeled by the phrase: 'It is an affirmative defense to prosecution under . . .'") and Tenn. Code Ann. § 39-11-203(a) ("[a] defense to prosecution for an offense in this title is so labeled by the phrase: 'It is a defense to prosecution under . . . that . . . '"). However, the prescription does constitute an exception.[3] <u>See</u> Tenn. Code Ann. § 39-17-427 ("It is an exception to this part if the person lawfully possessed the controlled substance as otherwise authorized by [the Tennessee Drug Control Act of 1989]; <u>see also</u> Tenn. Code Ann. § 39-17-418(a). Tenn. Code Ann. § 39-11-202 provides as follows:

> (a) An exception to an offense in this title is so labeled by the phrase: "It is an exception to the application of . . .," or words of similar import.
> (b) (1) Unless the statute defining an offense states to the contrary, the state need not negate the existence of an exception in the charge alleging commission of the offense.
>     (2) An exception to be relied upon by a person must be proven by a preponderance of the evidence.

The State's proof established through the testimony of Officer Hickman that the appellant possessed twelve pills, both "round" and "oblong," of the controlled substance stipulated as dihydrocodeinone. Also stipulated was the fact that the appellant possessed a valid prescription for Lortab, which contains dihydrocodeinone. However, the appellant admitted on direct examination[4] and

---

[3]The only difference between a defense and an exception is that a defense need only be sufficiently raised by the proof while an exception places the burden on the defendant to prove the exception by a preponderance of the evidence. <u>See</u> Tenn. Code Ann. § 39-11-202. Since the trial court charged the lesser burden, the defendant received the benefit of the instruction. Accordingly, we find the error is harmless. Tenn. R. Crim. P. 52(a).

[4]Q:(Direct examination) (Defense Counsel) I'll ask you to look at these pills here. Do they appear to be the kind of pills, that hydrocodone [sic] that come in pill form that are usually prescribed to you, or that you have gotten in your prescription? Can you identify any of those?
    A: (Defendant) Some of these, yes.

again on cross-examination that the "round" dihydrocodeinone pills found in his pants pocket were not possessed by virtue of a prescription. It is incumbent upon the defendant to bring himself entirely within the exception contained in the statute. Tenn. Code Ann. § 39-11-202. See generally State v. Sanderson, 550 S.W.2d 236 (Tenn. 1977) (providing discussion of prescription exception); Hayes v. State, 513 S.W.2d 144, 145 (Tenn. Crim. App. 1974), (exception recognized and burden of proof on person claiming it). By the appellant's own admission, he did not fall within the exception. Moreover, he failed to meet his burden of establishing by a preponderance of the evidence that the "round" pills fell under his valid prescription. The plain language of Tenn. Code Ann. § 39-17-418(a) requires that the controlled substance possessed, not merely the same schedule of drug, be directly possessed from a valid prescription. If this court construed the statute as the appellant argues, it would permit a defendant in possession of a valid prescription to illegally obtain the controlled substance and cloak himself under the protection of the prescription. Accordingly, viewing the evidence in the light most favorable to the State, the proof was sufficient to convict the appellant of possession of dihydrocodeinone.

### B. Possession of Marijuana

Next, the appellant challenges his conviction for possession of marijuana based upon the fact that the appellant "did not know how it [marijuana] got to be on his person." The testimony of the State's witnesses clearly established that the appellant had possession of the marijuana. Officer Hickman testified that he removed two marijuana cigarettes from the appellant's shirt pocket and a "baggie" containing loose marijuana from the appellant's pants. Officer Wallace identified the marijuana as that given to him by Hickman that he sent to the crime lab. Taken in the light most favorable to the State, we conclude that the evidence was sufficient for a rational juror to find the appellant guilty of this offense beyond a reasonable

---

Q: Okay. And what are the ones that you can identify and know - - - -
A: The ones that are oblong with the specs [sic] in them is the hydrocodone [sic], that's the cheap name brand. The round ones, I don't - - - -
Q: The name brand, or the cheaper brand of lortab you are talking about?
A: The round ones, I have not seen, I don't know what they are. They were not in my pocket, I have no idea what these are.
. . .
Q: So, you don't know whether the other round pills there, or the dihydrocodone [sic] was prescribed for you, or not, you don't remember taking that as such.
A: No, I don't

7

doubt.  <u>See</u> Tenn. Code Ann. § 39-17-418(a).


### C.  Driving Under the Influence

Third, the appellant challenges the sufficiency of the evidence to sustain his conviction for driving under the influence.  The overwhelming nature of the evidence, including the appellant's admission of intoxication, established, beyond a reasonable doubt, the appellant's guilt for driving under the influence.  <u>See</u> Tenn. Code Ann. § 55-10-401 Supp. (1996).


### D.  Failure to Obey a Traffic Signal

Finally, the appellant challenges his conviction for failure to obey a traffic signal.  We conclude that Officer Wallace's testimony that the appellant sped through a red traffic signal without applying the brakes at the intersection of John B. Dennis and Stone Drive is sufficient for a rational juror to find him guilty of this offense beyond a reasonable doubt.  <u>See</u> Tenn. Code Ann. § 55-8-110 (1992 Supp.).


## II.  Chain of Custody

In his second issue, the appellant challenges the chain of custody related to his possession of drugs.  He argues that because Officer Hickman failed to make identifying marks on the bags or drugs before giving them to Officer Wallace, who was absent during the search, the State did not establish the requisite chain of custody necessary to admit the drugs into evidence.   It is well-established that before physical evidence may be introduced, the party offering the evidence must produce a witness who is able to identify the evidence or establish an unbroken chain of custody.  <u>State v. Holbrooks</u>, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998).  However, the party is not required to prove the identity of the physical evidence to an absolute certainty nor is the party required to exclude all possibilities of tampering.  <u>State v. Holloman</u>, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992).  The identification or chain of custody is sufficient "if the facts establish a reasonable assurance of the identity of the evidence" and its integrity.  <u>State v. Woods</u>, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990); <u>State v. Kilburn</u>, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989).  The question of whether the chain of custody has been sufficiently established by the proof rests within the sound discretion of the trial court

and will not be overturned on appeal absent an abuse of that discretion. <u>Holloman</u>, 835 S.W.2d at 46.

The State produced the testimony of Officer Hickman who identified the two marijuana cigarettes and the cellophane wrapper containing the separately packaged marijuana and hydrocodeinone pills as the items seized from the appellant. Then, Officer Hickman provided that he immediately recorded the items in the log book and turned them over to Officer Wallace. Wallace identified the drugs and the cellophane wrapper as the items given to him by Officer Hickman that he later sent to the crime lab. Moreover, the appellant testified that he normally carried his hydrocodeinone pills inside a cellophane wrapper or plastic bag.

The fact that Officer Hickman did not place identifying marks on the bag or drugs goes to the weight and credibility of the evidence and not their admissibility. Finding no abuse of the trial court's discretion, this issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
DAVID H. WELLES, Judge

9