# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1998

FILED

March 18, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9701-CC-00003** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **WAYNE COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JAMES L. WEATHERFORD** |
| **JEFFREY EDWARD PITTS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Class E Felony)** |

**FOR THE APPELLANT:**

W.C. KEATON
LAURA METCALF
Keaton, Turner & Spitzer
P. O. Box 789
102 N. Court Street
Hohenwald, TN  38462

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN YACUZZO
Assistant Attorney Geneal
425 Fifth Avenue North
Nashville, TN  37243-0493

MIKE BOTTOMS
District Attorney General

STELLA HARGROVE
Assistant District Attorney
Public Square
Columbia, TN  38401

OPINION FILED _____

AFFIRMED IN PART; REVERSED IN PART

JERRY L. SMITH, JUDGE

# OPINION

The appellant, Jeffrey Edward Pitts, was convicted by a Wayne County jury of two (2) counts of sexual battery, a Class E felony. He was sentenced as a Range I offender to consecutive terms of one (1) year incarceration for each offense. On appeal, Appellant presents the following issues for our consideration: (1) whether there was a fatal variance between the indictment and the state's proof at trial; (2) whether the evidence was sufficient to sustain Appellant's convictions; (3) whether the prosecution's closing argument was improper; (4) whether the trial court erred in failing to instruct the jury on the lesser included offense of assault; and (5) whether the trial court properly sentenced Appellant. After a thorough review of the record before this Court, we conclude that the state failed to establish venue on Count One; therefore, Appellant's conviction on Count One is reversed. In all other respects, the judgment of the trial court is affirmed.

## FACTUAL BACKGROUND

D.Q.,[1] the victim, worked at Buffalo River Services, an organization employing mentally disabled individuals.[2] He was forty-three years old at the time of trial in 1996 and had worked for Buffalo River Services since 1973. Part of D.Q.'s employment included traveling periodically to nearby towns with a supervisor in order to empty donation boxes. Appellant was such a supervisor.

---

[1] It is the policy of this Court to not reveal the names of victims of sexual abuse.

[2] Phillip Garner, Executive Director for Buffalo River Services, testified that to qualify as a client at that organization, an individual must have an IQ of sixty-nine (69) or below.

D.Q. testified that during one of their trips, Appellant asked D.Q. to perform oral sex on Appellant, but D.Q. refused. Appellant persisted in soliciting oral sex from D.Q., and D.Q. ultimately acquiesced on two different occasions. According to his testimony, D.Q. complied with Appellant's wishes because Appellant was "the boss" and because D.Q. had been directed to do whatever the boss said.

On the first occasion, Appellant and the victim drove alone to Hohenwald to collect donations from the donation boxes when Appellant again asked D.Q. to perform oral sex on him. Appellant told D.Q. that the oral sex would "make [Appellant] feel good." Appellant also warned the victim not to tell anyone about what had occurred. D.Q. could not recall the specific location of the first incident.

D.Q. testified that the second incident occurred on the day immediately following the first incident. He recalled that the second incident occurred while he, Appellant, and another Buffalo River Services client, Larry Griffin, were returning from Hohenwald after retrieving collections from the donation boxes. D.Q. testified that the second incident occurred near a cafe and a service station located in Waynesboro, Tennessee.

At trial, the state called Larry Griffin to testify. However, Griffin was unresponsive to the oath, as well as to questions posed by the prosecution and defense counsel.

Both D.Q. and his father testified that D.Q. experienced seizures. D.Q. admitted that during a seizure, it was not uncommon for him to grab people or objects nearby. The victim's father explained that it was not unusual for D.Q. to have two or three seizures per day.

The state presented documentation from Buffalo River Services which showed that the victim had traveled with a supervisor to assist in picking up clothing for the donation boxes on June 22 and June 30 of 1994. The

documentation further showed that Larry Griffin was "possibly" riding with the victim on June 30. The state further presented "vehicle documentation sheets" from June 22 and June 30, which showed that Appellant was traveling on those days. However, the "vehicle documentation sheets" indicated that Appellant was traveling with supported employment clients on those days. The victim was a "day services client," not a "supported employment client." Laura Brewer, the program director at Buffalo River Services, testified that the driver of the vehicle was the person who completed the "vehicle documentation sheet."[3]

Appellant testified in his own behalf at trial. He stated that he worked at Buffalo River Services from approximately April 1987 until August 1994. Appellant supervised both the vocational rehabilitation program and supported employment program.

Appellant testified that because D.Q. was a day services client, he was not under Appellant's supervision. Appellant denied ever being alone with the victim in a vehicle during the summer of 1994. He further testified that he was never in a vehicle with D.Q. and Larry Griffin during that time period.[4] Appellant stated that there were only two occasions where he traveled with "day services clients" during the summer of 1994, and D.Q. was not one of those clients. Additionally, he denied falsifying the "vehicle documentation sheets" on any occasion.

The jury returned guilty verdicts on two (2) counts of sexual battery.[5] The trial court sentenced Appellant as a Range I offender to consecutive terms of one

---

[3] It was the state's theory at trial that because Appellant was responsible for completing the "vehicle documentation sheet," he falsified the documents to conceal his criminal activity.

[4] Because D.Q. was epileptic, Appellant testified that he never would have attempted to drive the truck accompanied only by D.Q. He explained that whenever he traveled with any client having a seizure disorder, such as epilepsy, he would take along a third person, either another staff member or a client with no history of seizures, to assist in restraining the individual in the event of a seizure until he could pull off the road. Appellant further testified that Griffin also experienced seizures.

[5] Appellant was originally indicted on two (2) counts of aggravated sexual battery. However, the state subsequently amended the indictment to charge Appellant with two (2) counts of sexual battery.

(1) year for each count. Additionally, the trial court denied alternative sentencing and ordered that Appellant serve his sentence in incarceration. From his convictions and sentences, Appellant brings this appeal.

## FATAL VARIANCE

In his first issue, Appellant argues that the evidence presented at trial differed from the dates elected by the state in the bill of particulars to such a degree as to present a fatal variance between the indictment and the proof. He claims that because the victim testified that the offenses occurred on consecutive days, but the state elected non-consecutive days as the dates of the offenses, he was severely prejudiced.

Tenn. Code Ann. § 40-13-207 provides, "[t]he time at which an offense was committed need not be stated in the indictment. . . unless the time is a material ingredient of the offense." Indeed, it is only necessary that the evidence prove that the offense occurred prior to the return of the indictment. State v. Anderson, 748 S.W.2d 201, 203 (Tenn. Crim. App. 1985). A variance between the indictment and the proof at trial will not be held fatal unless it is both material and prejudicial. State v. Holloman, 835 S.W.2d 42, 45 (Tenn. Crim. App. 1992). "A material variance will not be found where the allegations and proof substantially correspond." Id.

In the present case, the indictment alleged that the offenses occurred during the summer of 1994. In response to Appellant's motion for a bill of particulars, the state furnished the defense with three possible dates of the offenses: April 4, June 22, and June 30, 1994. At the conclusion of the state's proof, the prosecution narrowed its election to June 22 and June 30, 1994.

Contrary to Appellant's assertion, we find no variance between the indictment and the proof presented at trial. The indictment alleged that the offenses occurred in the summer of 1994, and the state elected the dates of the offenses to be June 22 and June 30, 1994. The victim testified that the offenses occurred in the "summertime" because the trees were green. Furthermore, the state presented documentation that the offenses occurred on June 22 and June 30, 1994.

The only evidence presented by the state that the offenses occurred on consecutive dates was the testimony of the victim, a mentally disabled person. The fact that the victim testified to consecutive dates when the state relied upon non-consecutive dates merely amounts to a conflict in proof for the jury to reconcile. The majority of the state's proof supported the allegation that the offenses occurred on June 22 and June 30, 1994. There was no variance, material or otherwise, between the indictment and the state's proof at trial.

This issue is without merit.

## SUFFICIENCY OF THE EVIDENCE

In his next issue, Appellant argues that the evidence is insufficient to support his convictions for sexual battery. Specifically, he claims that the state failed to prove the elements for two counts of sexual battery. Further, he insists that the victim was an "accomplice" to any sexual activity, and therefore, his testimony must be corroborated. Finally, Appellant asserts that the state failed to establish that the offenses occurred in Wayne County and, thus, failed to establish venue by a preponderance of the evidence.

### A.  Standard of Review

This Court reviews a challenge to the sufficiency of the evidence according to certain well-settled principles. On appeal, "the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); Tenn. R. App. P. 13(e). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence and may not substitute its own inferences for those drawn by the trier of fact. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d at 75. Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.

## B. Elements of Sexual Battery

Appellant contends that the state failed to prove the essential elements of sexual battery beyond a reasonable doubt. Firstly, he claims that there is insufficient evidence for the jury to find that the victim was "mentally defective"

under Tenn. Code Ann. § 39-13-501(3). He further argues that the state failed to prove that the sexual contact was "unlawful." Finally, he asserts that the state failed to prove two (2) instances of sexual contact.

**1.**

Sexual battery is "unlawful sexual contact with a victim by the defendant or the defendant by a victim" where the "defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless." Tenn. Code Ann. §§ 39-13-503(a)(2), 39-13-505(a) (1991). Under Tenn. Code Ann. § 39-13-501(3) (1991), a person is "mentally defective" if the person "suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his conduct."

At trial, the victim's father testified that D.Q. was approximately eight (8) years old when he was institutionalized due to a mental disability. D.Q. remained in the institution for about ten (10) years. The victim's father testified that, although D.Q. can write his own name, he has never learned how to read. Furthermore, the victim's father testified that D.Q. had never dated, did not discuss sex and had never "act[ed] out sexually." Additionally, Phillip Garner, Executive Director of Buffalo River Services, testified that to qualify as a client at that organization, an individual must have an IQ of sixty-nine (69) or below. D.Q. began working at Buffalo River Services in 1973 and continued to do so during the trial in 1996.

Appellant argues that because the victim testified on several occasions that he knew the sexual activity was "wrong," and because he refused to participate in the sexual activity on a prior occasion, then he was capable of "appraising the nature of his conduct." However, knowing that such sexual activity is "wrong" does not necessarily equate with being capable of appraising the nature of his

conduct. D.Q., as a client of Buffalo River Services, had to have an IQ of sixty-nine (69) or below in order to participate in the program. Moreover, the jury was able to observe the victim during his testimony and determine his mental capacity.[6] There was sufficient evidence from which a jury could find that the victim was "mentally deficient" under the statute. *See* Tenn. Code Ann. § 39-13-501(3) (1991).

**2.**

Appellant also argues that the state failed to prove that the sexual contact was "unlawful." He cites Campbell v. Sundquist, 926 S.W.2d 250 (Tenn. App. 1996), for the proposition that consensual, homosexual activity is not an illegal act. Apparently, the appellant's argument is that an "unlawful" sexual act is synonymous with a non-consensual act; therefore, if the victim consented to the sexual contact, there is no sexual battery.

In State v. Jones, 889 S.W.2d 225 (Tenn. Crim. App. 1994), the defendant raised a similar argument with regard to aggravated rape. This Court rejected the argument, stating, "[e]ven though the term 'unlawful' may generally refer to non-consensual acts, the defense of consent is still not available when the factor elevating the crime from simple rape to aggravated rape is the age of the victim." Id. at 227. We find the same reasoning applies in this case. Because lack of consent is not an element to sexual battery under this portion of the statute, the consent of the victim is never a defense. *See* Tenn. Code Ann. §§ 39-13-503(a)(2), 39-13-505(a) (1991). The use of the word "unlawful" in the statute does not alter this.

---

[6] Indeed, the trial court commented at the sentencing hearing, "I'm convinced from the testimony, from his family members, from seeing the [victim] myself, seeing him testify, that he is severely mentally handicapped . . ."

**3.**

Appellant further argues that the state merely proved one instance of sexual battery; therefore, one of his convictions must be reversed. Although the victim's testimony is admittedly confusing, he explained to the jury that he refused to participate in the sexual activity when he and Appellant were on a trip to Collinwood. He then testified that the first time he participated in the activity, he and Appellant were alone in the truck on the way to Hohenwald. The second incident occurred on the way back from Hohenwald, and Larry Griffin was present in the truck. The victim did not describe both incidents in detail, but testified that both incidents lasted approximately five (5) minutes. The state presented sufficient evidence of two (2) separate instances of sexual activity.

This issue is without merit.

## C. Accomplice Testimony

Next, Appellant contends that the victim was an accomplice to any sexual activity. Therefore, he contends that the victim's testimony must be corroborated. Appellant maintains that, without such corroboration, his convictions for sexual battery can not be sustained.

It is well-established that a conviction may not be based solely upon the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. McKnight, 900 S.W.2d 36, 47 (Tenn. Crim. App. 1994). Appellant relies on State v. Schimpf, 782 S.W.2d 186, 196 (Tenn. Crim. App. 1989), for the proposition that "a child, even though legally incapable of consenting to a crime, may nevertheless be an accomplice, thus necessitating corroboration of his

testimony." Appellant urges this Court to extend this "victim-accomplice"[7] rule to this case so that we should find that the victim, notwithstanding his inability to appreciate the nature of his conduct, was a willing participant and, thus, an accomplice to any sexual activity. This we decline to do.

First, the proposition in Schimpf was effectively overturned in 1991 with the enactment of Tenn. Code Ann. § 40-17-121, which provides:

> [i]f the alleged victim of a sexual penetration or sexual contact within the meaning of § 39-13-501 is less than thirteen (13) years of age, such victim shall, regardless of consent, not be considered to be an accomplice to such sexual penetration or sexual contact, and no corroboration of such alleged victim's testimony shall be required to secure a conviction if corroboration is necessary solely because the alleged victim consented.

Secondly, an "accomplice" is one who "knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." State v. Robinson, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). A "mentally defective" person under Tenn. Code Ann. § 39-13-501(3) is one who "suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his conduct." Tenn. Code Ann. § 39-13-501(3). It would be absurd to find a that person who is "incapable of appraising the nature of his conduct" could "knowingly, voluntarily, and with common intent" participate in a criminal offense with the principal offender. By its very definition, a "mentally defective" person is incapable of consenting to these sexual acts.

Moreover, the evidence presented in this case does not support the allegation that the victim was a willing participant to the sexual activity. D.Q.

---

[7] We are perplexed as to how a "victim" can be an "accomplice" under any circumstance. The two terms are mutually exclusive under Tennessee law. A "victim" is statutorily defined as "the person alleged to have been subjected to criminal sexual conduct." Tenn. Code Ann. § 39-13-501(8) (1991) (emphasis added). However, an "accomplice" is one who "knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." State v. Green, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995) (emphasis added). Furthermore, the "test" to determine if a person is an accomplice to an offense is whether that person could be indicted for or convicted of that offense. State v. Green, 915 S.W.2d at 831; State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990).

testified that he acquiesced only because Appellant was his boss, and he had been directed to do whatever the boss told him to do. D.Q. was not an "accomplice" to these acts; therefore, no corroboration was required.

This issue has no merit.

### D. Venue

Appellant further claims that the state failed to present sufficient proof that the offenses occurred in Wayne County. The state concedes that venue was not established as to Count One of the indictment, but argues that sufficient evidence was presented that Count Two occurred in Wayne County. We agree.

Article I, § 9 of the Tennessee Constitution provides, "in all criminal prosecutions, the accused hath the right to. . . a speedy public trial, by an impartial jury of the County in which the crime shall have been committed. . . ." *See also* Tenn. R. Crim. P. 8(a) ("Except as otherwise provided by statute or by these rules, offenses shall be prosecuted in the county where the offense was committed."). Venue is a jurisdictional fact and not an element of the charged offense. State v. Bloodsaw, 746 S.W.2d 722, 723-24 (Tenn. Crim. App. 1987). The prosecution must satisfy its burden of proving that the offense was committed in the county alleged in the indictment. State v. Smith, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995). In a criminal case, venue must be proved by a preponderance of the evidence. Tenn. Code Ann. § 39-11-201(e); State v. Marbury, 908 S.W.2d 405, 407 (Tenn. Crim. App. 1995); State v. Davis, 872 S.W.2d 950, 952 (Tenn. Crim. App. 1993). This evidence may be either direct, circumstantial, or both. State v. Smith, 926 S.W.2d at 269.

At trial, D.Q. could not recall the specific location of the first incident. He stated only that he and Appellant were traveling toward Hohenwald at the time of the first sexual incident. Because they were traveling from Waynesboro to

Hohenwald during the incident, D.Q. and Appellant might have crossed the county line. Thus, the prosecution failed to establish venue regarding this first incident. Therefore, Appellant's conviction as to Count One must be reversed.

However, D.Q. stated that the second instance of sexual contact occurred while returning from Hohenwald. He testified that they were in Waynesboro, near a service station and a cafe. D.Q. also testified that Waynesboro is in Wayne County. Only slight evidence is needed to satisfy the prosecution's burden of proving venue so long as that evidence is uncontradicted. State v. Bloodsaw, 746 S.W.2d at 724. The victim's testimony that the second incident occurred in Wayne County is uncontradicted. Accordingly, the state sufficiently established venue with regard to Count Two.

## IMPROPER ARGUMENT

Appellant next contends that the state made improper remarks during its closing argument. Firstly, Appellant complains that because Griffin was unable to testify, the prosecution improperly argued that Larry Griffin was present in the vehicle with Appellant and the victim. Secondly, he argues that the state compounded this error by implying that Griffin's testimony would have bolstered D.Q.'s testimony had Griffin testified.

The portion of closing argument complained of by Appellant reads as follows:

> If you're going to have a witness, it's usually somebody who is incapable of coming forward and corroborating. Too young generally would be the case to document and corroborate what's going on.

> And isn't that what we have in this case? Of all the people that could have been victimized by Jeff Pitts and could have been

a witness to these illicit relations would be Mr. Griffin. You've been able to observe that he--Well, you've observed what you observed from him and I'll leave it there.

"Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper commentary." Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995) (citing Sparks v. State, 563 S.W.2d 564 (Tenn. Crim. App. 1978)). The broad discretion accorded to trial courts in controlling the argument of counsel "will not be reviewed absent abuse of that discretion." Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975); see also State v. Payton, 782 S.W.2d 490, 496 (Tenn. Crim. App. 1989). The bounds of proper closing argument are delineated by the facts in evidence. State v. Pulliam, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996). Conversely, facts not in evidence may not be the subject of comment by counsel during closing argument. State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982).

Appellant has waived his right to raise this issue on appeal due to his failure to contemporaneously object to the prosecution's allegedly improper remarks at trial. State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); State v. Seay, 945 S.W.2d 755, 762 (Tenn. Crim. App. 1996); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992); Tenn. R. App. P. 36(a). Moreover, Appellant did not make proper citations to the record to such erroneous argument. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tennessee Court of Criminal Appeals Rule 10(b).

In any event, we do not view the prosecution's argument as erroneous. The victim testified that Larry Griffin was present during the second instance of

sexual abuse. Furthermore, the state presented documentation that Griffin was possibly traveling with the victim on June 30, the date of the second sexual assault. Although Griffin was not able to testify, the jury observed the trial court and counsel attempting to administer the oath. The state's argument was based upon evidence that had been presented to the jury. Furthermore, Appellant has not established how the alleged improper argument affected the jury's verdict. *See* State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

This issue is without merit.

## LESSER INCLUDED OFFENSE OF ASSAULT

Appellant next complains that he was denied his constitutional right to trial by jury as a result of the trial court's failure to instruct the jury on assault as a lesser included offense of sexual battery.[8] We disagree.

Initially, we must note that Appellant failed to include this issue in his motion for new trial. Therefore, the issue is waived. Tenn. R. App. P. 3(e); State v. Maddox, 957 S.W.2d 547, 553 (Tenn. Crim. App. 1997); State v. Spadafina, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996).

Nevertheless, we will address the merits of this argument briefly. The accused in a criminal prosecution has a right to a correct and complete charge of the law applicable to the case. State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994); State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981). The trial court's failure to instruct the jury on any lesser included offenses raised by the evidence denies a defendant his constitutional right to trial by jury. State

---

[8] The parties do not dispute that assault is a lesser included offense of sexual battery. *See* State v. Howard, 926 S.W.2d 579, 586 (Tenn. Crim. App. 1996).

v. Wright, 618 S.W.2d at 315 (citing State v. Staggs, 554 S.W.2d 620, 626 (Tenn. 1977)).

Tenn. Code Ann. § 40-18-110 provides in part:

(a) It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.

Tenn. Code Ann. § 40-18-110(a); *see also* State v. Jones, 889 S.W.2d at 230.

Tennessee case law is clear that a defendant is entitled to a jury instruction "on all lesser included offenses where 'any facts. . . are susceptible of inferring guilt of any lesser included offense.'" State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996) (quoting State v. Wright, 618 S.W.2d at 315.).

At trial, Appellant denied being alone in the truck with D.Q. on the days in question. Appellant completely denied having any physical contact whatsoever with the victim. The extent of the touching was not an issue at trial. "When there is no evidence to support a lesser included offense so that the accused can be guilty only of the greater offense or no offense at all, it is not error to refuse to instruct the lesser included offenses." State v. Barker, 642 S.W.2d 735, 738 (Tenn. Crim. App. 1982); *see also* State v. Larry Fields, C.C.A. No. 11 (Tenn. Crim. App. filed March 20, 1991, at Jackson), *perm. to app. denied* (Tenn. July 1, 1991); State v. David H. Owen, C.C.A. No. 1209 (Tenn. Crim. App. filed May 26, 1989, at Knoxville), *perm. to app. denied* (Tenn. October 2, 1989). Because the evidence supported either a finding that Appellant was guilty of sexual battery or nothing at all, an instruction on assault was not warranted under the facts of this case.

This issue has no merit.

## SENTENCING

In his final issue, Appellant complains that his sentence is excessive. Specifically, he alleges that the trial court misapplied certain enhancement factors. Additionally, he argues that he was erroneously denied alternative sentencing. Finally, he claims that the trial court erred in imposing consecutive sentences.

### A. Standard of Review

When an appellant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determination of the trial court was correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption of correctness is "conditioned upon the affirmative showing that the trial court in the record considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to demonstrate such consideration, review of the sentence is purely *de novo*. Id. If appellate review reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this Court must affirm the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In conducting a review, this Court must consider the evidence, the presentence report, the sentencing principles, the arguments of counsel, the nature and character of the offense, mitigating and enhancement factors, any statements made by the defendant, and the potential for rehabilitation or treatment. State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993). The defendant bears the burden of showing the impropriety of the sentence imposed. State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993).

-17-

## B. Length and Manner of Sentence

Appellant challenges the trial court's finding of enhancement factors and further challenges the court's decision to deny alternative sentencing.

### 1.

Appellant was convicted of sexual battery, a Class E felony. Tenn. Code Ann. § 39-13-505(b)(1991). As a Range I standard offender convicted of a Class E felony, Appellant's statutory sentencing range was one to two years. Tenn. Code Ann. § 40-35-112(a)(5). The trial court found that the following enhancement factors should apply: (1) the victim of the offense was "particularly vulnerable because of age or physical or mental disability," Tenn. Code Ann. § 40-35-114(4); and (2) the "offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement," Tenn. Code Ann. § 40-35-114(7). In mitigation, the trial court applied Tenn. Code Ann. § 40-35-113(13) in light of Appellant's regular employment, meeting his father's health care needs, and making current child support payments. The trial court imposed a sentence of one (1) year, the minimum within the range, for each conviction. The trial court further denied alternative sentencing in an effort to avoid depreciating the seriousness of the offense.

### 2.

Appellant claims that the trial court erred in applying Tenn. Code Ann. §40-35-114(4) and (7) as both enhancement factors are elements of the offense of sexual battery. The state concedes that these factors were misapplied, and we agree. However, because the trial court sentenced Appellant to the minimum sentence within the range, he is not entitled to a reduction in his sentence.[9]

_____

[9] Appellant does not argue that he should be sentenced as an Especially Mitigated Offender under Tenn. Code Ann. § 40-35-109. However, this Court finds that he would not be entitled to sentencing as an Especially Mitigated Offender. We are authorized, under our power of *de novo* review, to consider any enhancement factors supported

-18-

**3.**

Appellant further argues that the trial court erred in denying alternative sentencing. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to eight (8) years or less and who is not an offender for whom incarceration is a priority is subject to alternative sentencing. State v. Byrd, 861 S.W.2d 377, 379-380 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. Id. at 380. However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); *see* Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The defendant's

by the record. State v. Claybrooks, 910 S.W.2d 868, 873 (Tenn. Crim. App. 1994). Appellant has a history of prior criminal conduct as he admitted to illegal marijuana use in the pre-sentence report. Tenn. Code Ann. § 40-35-114(1). Furthermore, although rejected by the trial court as an enhancement factor, we find that Appellant abused a position of private trust. Tenn. Code Ann. § 40-35-114(15).

lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996).

As Appellant was convicted of a Class E felony, he is entitled to the presumption in favor of alternative sentencing. Tenn. Code Ann. § 40-35-102(6). However, Appellant is not eligible for community corrections because he was convicted of committing sexual battery, a crime against the person. Tenn. Code Ann. § 40-36-106(a)(2).

At the time of sentencing, Appellant had no prior criminal record. He testified at his sentencing hearing that if the court placed him on probation, he would be willing to comply with the terms of his probation, including attending counseling.

This Court has previously held that the fact that the convicted crime is a crime of violence can be a factor which would weigh against probation. State v. Gennoe, 851 S.W.2d 833, 837 (Tenn. Crim. App.), *perm. to app. denied* (Tenn. 1992). Furthermore, a breach of trust can also be a basis for denying probation. Id.

This Court concludes that the trial court did not err in denying probation. The circumstances of the offense were such that Appellant, as the victim's supervisor, pursued the victim for sexual relations. The victim had been instructed to obey his supervisors and ultimately acquiesced in the sexual activity as a result. The proof demonstrated that the victim was severely mentally handicapped, as noted by the trial court in sentencing. Notwithstanding the presumption in favor of alternative sentencing, the circumstances of the offense along with the patent breach of trust support the trial court's conclusion that probation was not warranted in this case.

This issue is without merit.

### C.  Consecutive Sentencing

Finally, Appellant contends that the trial court erred in imposing consecutive sentences for his convictions.  However, because we must reverse Appellant's conviction for sexual battery in Count One due to the state's failure to establish venue, this issue is moot.

### CONCLUSION

We find that the evidence is insufficient to establish that the offense of sexual battery in Count One occurred in Wayne County; therefore, Appellant's conviction in Count One is reversed.  However, because we conclude that no other reversible error exists in the record, we affirm the trial court's judgment with respect to Count Two.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID H. WELLES, JUDGE

_____
THOMAS T. WOODALL, JUDGE