# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 17, 2003

## STATE OF TENNESSEE v. BOBBY BLAIR

**Appeal from the Circuit Court for Humphreys County**
**No. 10122     Allen W. Wallace, Judge**

---

**No. M2002-01610-CCA-R3-CD - Filed February 13, 2004**

---

A Humphreys County Circuit Court jury convicted the defendant, Bobby Blair, of manufacturing methamphetamine, a Class B felony, and the trial court sentenced him as a Range I, standard offender to twelve years in the Department of Correction. The defendant appeals, claiming that (1) the evidence is insufficient to support his conviction; (2) the trial court erred by refusing to grant a continuance when the state announced a few days before trial that it was going to call an expert witness to testify; (3) the trial court erred by denying the defendant's motion to suppress and exclude evidence because the defense was not able to examine and test the equipment and chemicals found at the crime scene; (4) the trial court erred by allowing the state's expert to testify that the defendant was not manufacturing methamphetamine for personal use; (5) the trial court erred by failing to instruct the jury on the lesser included offense of simple possession of methamphetamine; and (6) the trial court erred by refusing to instruct the jury on "immediate precursor." We conclude that no error occurred, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

William B. "Jake" Lockert, III, District Public Defender, for the appellant, Bobby Blair.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Lisa Carol Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's being found at a campsite with equipment and chemicals commonly used to make methamphetamine. Ronnie T. Toungette, the Humphreys County Sheriff, testified that on the afternoon of July 10, 2001, he and another deputy went to a remote area on Bear Creek. He said that the area had a boat ramp and was a popular fishing spot, that camping was

prohibited there, and that the nearest house was about one-quarter mile away. He said that when he and the deputy arrived at Bear Creek, they saw a camper-type vehicle, evidence of a campfire, and evidence that someone had been cooking. He said that an all-terrain vehicle also was present and that wooden boards had been nailed to trees in order to make tables. He said that a boat was parked at the campsite but that he saw no evidence anyone had been fishing. He said that no one was at the campsite and that he and the deputy left. He said that when he returned to the Sheriff's Office, he posted a flyer ordering night officers to return to the area.

Jessie McCloud testified that in July 2001, he was a deputy for the Humphreys County Sheriff's Department. He testified that on July 10, he worked the evening shift and saw Sheriff Toungette's order posted on the bulletin board. He said he and Officer William Macken went to Bear Creek Landing about 11:00 p.m. and saw the defendant sitting in a recliner with a blanket covering the recliner. He said that he called to the defendant a couple of times and that the defendant finally got out of the chair. He said he told the defendant that the defendant was going to have to leave because camping was not allowed. He said he was standing beside a closed cooler and smelled ether in the cooler. He said he had become familiar with the smell of ether because he had been working on cases involving methamphetamine. He said he opened the cooler, saw a red bucket containing a liquid and something floating in the liquid, and arrested the defendant, charging him with manufacturing methamphetamine. He said that he telephoned the Twenty-Third Judicial District Drug Task Force and that it contacted the federal Drug Enforcement Administration (DEA), which arrived to clean up the scene.

Mr. McCloud testified that a DEA agent poured out the liquid in the red bucket, let the substance that had been floating in the liquid air dry, and gave him the substance as evidence. He said that he thought the substance was methamphetamine and that the substance was sent to the Tennessee Bureau of Investigation (TBI) for testing. He said the DEA destroyed a bottle of Heet and a bottle of drain cleaner that also were at the campsite. He said that batteries, Morton's salt, aluminum foil, five empty Mason jars without lids, and Coleman lanterns also were present.

On cross-examination, Mr. McCloud testified that a police inventory list showed that officers found the following items at the scene: Four Coleman lanterns, one tackle box containing fishing tackle, a motorcycle, an all-terrain vehicle, a rake, three folding chairs, an ax, three coolers, five skillets, a radio, a canoe, and ten fishing poles. He said that he did not know if other people were staying at the campsite with the defendant and that when he arrived at the scene, the defendant was pretending to be asleep. He said that he did not try to collect fingerprints from any of the items found at the campsite and that he did not ask the DEA agents to fingerprint anything. He said the DEA kept most of the chemicals found at the campsite and destroyed them. He said that police officers photographed the scene but that the only physical evidence he was allowed to keep was the air-dried substance from the red bucket. He acknowledged that at the defendant's preliminary hearing, he testified that he was positive the substance in the red bucket was methamphetamine. He acknowledged, though, that he later learned the substance was not methamphetamine. He also acknowledged that he did not find iodine or anhydrous ammonia, ingredients commonly used in the methamphetamine manufacturing process, at the campsite. He said that he was at the campsite for

three to four hours and that he did not see anyone other than law enforcement officers arrive during that time.

Tara Barker, a special agent forensic scientist with the TBI, testified that she tested the dried substance from the red bucket. She said that the substance was 378.6 grams of pseudoephedrine.

Rick Stewart, a DEA agent and expert in manufacturing methamphetamine, testified that he did not visit the campsite but saw photographs of it. He said that when small-town police officers find methamphetamine laboratories, they should call the DEA and let DEA agents destroy the laboratories because they are extremely dangerous. He said officers should not try to fingerprint items at a methamphetamine laboratory because chemicals could react or get on the officers' skin. He said there are two methods for making methamphetamine, the "Nazi" method and the "Red Phosphorous" method. He said that in order to make methamphetamine, a person needs a precursor such as pseudoephedrine, which is contained in decongestant pills such as Sudafed. He said the pills must be mixed with a liquid such as Heet in order to separate the pseudoephedrine from the pills' other ingredients.

The state showed Agent Stewart a photograph of the red bucket containing the liquid and the substance floating in the liquid. He noted that the substance had a pink tint, indicating that the liquid was breaking down Sudafed pills, which have a pink coating. He said that using the Red Phosphorus method, a person could make about one-half pound of methamphetamine and that a pound of methamphetamine was worth $10,000 to $20,000. He said that based upon photographs taken at the campsite and the large amount of pseudoephedrine present, he believed the defendant was manufacturing methamphetamine and that the defendant was not making the drug for personal use.

On cross-examination, Agent Stewart testified that it would have been impractical to dust the red bucket for fingerprints because fingerprints can only be collected from flat, clean surfaces. He said that Coleman fuel is used to make methamphetamine and that lithium strips from batteries are used in the Nazi method. He acknowledged that batteries also are used in flashlights and that Coleman fuel could have been used in the Coleman lanterns found at the scene. He said that taken alone, the equipment and chemicals found at the campsite had legitimate purposes. He said that taken together, though, the items indicated manufacturing methamphetamine. He said that he could not tell which manufacturing method the defendant was using but that the pseudoephedrine in the red bucket was an "immediate precursor" to making methamphetamine. The jury convicted the defendant of manufacturing methamphetamine, a Schedule II controlled substance.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence is insufficient to support his conviction. He contends that because almost all of the equipment and chemicals found at the campsite were destroyed, the state was unable to link him to the equipment through fingerprint evidence or prove with scientific testing that the chemicals were the chemicals the state claimed. He also argues that the evidence is insufficient to show that he was manufacturing methamphetamine for distribution because the police

-3-

did not find any scales, packaging materials, or cash at the campsite to indicate that the defendant was manufacturing the drug for anything other than personal use. Finally, he contends that the evidence is insufficient because the police did not find methamphetamine at the campsite and because pseudoephedrine is not an "immediate precursor" to manufacturing methamphetamine. The state claims that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

It is a crime for a person knowingly to manufacture a controlled substance. T.C.A. § 39-17-417(a)(1). A "controlled substance" is a "drug, substance, or immediate precursor in Schedules I through VI of §§ 39-17-403 – 39-17-415." T.C.A. § 39-17-402(4). Pursuant to T.C.A. § 39-17-408(d)(2), methamphetamine is a Schedule II controlled substance. "Manufacture" means

> the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that "manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use . . . .

Viewing the evidence in the light most favorable to the state, the proof shows that the defendant was alone at the campsite with much of the chemicals and equipment needed to make methamphetamine. Mr. McCloud testified that he smelled ether in a cooler at the campsite and that he was familiar with the smell from working in other methamphetamine cases. Expert witness Agent Rick Stewart studied photographs taken at the scene and identified various items in the photographs as being needed to make methamphetamine. He testified that while each item alone had a legitimate purpose, the items as a whole showed the campsite was a methamphetamine laboratory. Moreover, he testified that the liquid in the red bucket was breaking down pseudoephedrine, an immediate precursor to methamphetamine; that the large amount of pseudoephedrine recovered demonstrated that the campsite was a methamphetamine laboratory; and that the methamphetamine was not being manufactured for personal use.

The defendant correctly points out that pseudoephedrine is not listed as an "immediate precursor" to methamphetamine as defined in the Tennessee Drug Control Act of 1989. <u>See</u> T.C.A.

§ 39-17-408(f) (listing only phenylacetone as an "immediate precursor"). However, the fact that pseudoephedrine is not listed does not mean it is not an immediate precursor to the drug, i.e., a substance from which the drug is derived. Instead, it means that our Commissioner of Mental Health and Developmental Disabilities has not designated pseudoephedrine as a precursor that needs to be controlled. See T.C.A. § 39-17-402(13) (providing that an "immediate precursor" is a "substance which the commissioner of mental health and developmental disabilities . . . has found to be and by rule designates as being . . . an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, the control of which is necessary to prevent, curtail, or limit manufacture"). Therefore, based upon the expert's opinion and the evidence found at the campsite, a rational jury could have found beyond a reasonable doubt that the defendant was guilty of manufacturing methamphetamine.

## II. MOTION TO CONTINUE

The defendant claims that the trial court erred by refusing to grant a continuance when the state announced a few days before trial that it was going to call an expert witness to testify. In addition, he contends that he was prejudiced by the trial court's denying his motion to continue because he did not have time to interview the state's expert or hire his own expert to contradict the state expert's testimony that the defendant was manufacturing methamphetamine and was not making the drug for his personal use only. The state argues that the defendant has waived this issue because he failed to include the transcript of the hearing on the motion in the appellate record. In addition, the state contends that the trial court properly denied the motion. We conclude that the trial court did not abuse its discretion by denying the defendant's motion for a continuance.

The record reflects that in October 2001, the trial court ordered the state to provide the defense with a list of witnesses and potential witnesses. On the afternoon of Friday, February 15, 2002, the state notified the defense that it intended to call DEA Agent Rick Stewart to testify at the February 20 trial. February 16-18 was a three-day weekend due to President's Day. On the morning of the trial, the defense filed a motion requesting a continuance because the defense had not had an opportunity to talk with Agent Stewart. During the hearing on the motion, the state informed the trial court that it had told the defense "from the word go" that it was trying to find an expert to testify in the case, that it did not find Agent Stewart until the Friday before trial, that it had informed the defense immediately of its intent to call Agent Stewart to testify, and that it provided the defense with Agent Stewart's telephone number on February 19. The defense acknowledged that it had not attempted to contact Agent Stewart and stated the following:

> [The state] is correct that she did afford us the opportunity to talk to the person yesterday. I would still point out -- and we were aware and anticipated that she was going to try to find an expert.
> Until the state does produce an expert, it would be premature to come in to Your Honor and say I want to get an expert to rebut the expert that I think the state is going to get if they are apt to find one. And we are asking for $5,000.00 to do that, because we think they

-5-

> will probably find one. Until they get an expert, we are not in a position to do that and justify doing that.

The trial court denied the defendant's motion, ruling that the defense had had time to contact Agent Stewart and that, in any event, given the evidence against the defendant, the defense should have hired an expert without waiting "for the state to prove something and then you try to rebut it." The trial court held that the defendant had waited too long to request a defense expert's assistance and denied his motion for a continuance.

The decision whether to grant a continuance rests within the discretion of the trial court. State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). The denial of a continuance will not lead to a reversal absent an abuse of discretion and resulting prejudice. See State v. Seals, 735 S.W.2d 849, 853 (Tenn. Crim. App. 1987).

Initially, we note that despite the state's claim that the defendant failed to include the transcript of the hearing on the motion to continue in the appellate record, the transcript is in the record before us and, therefore, the defendant has not waived the issue. That said, we do not believe the trial court abused its discretion by denying the defendant's motion. The defense told the trial court that it knew the state was trying to find an expert. Nevertheless, despite the fact that the defense was "aware and anticipated" that the state was looking for an expert well before trial, the defense did not attempt to hire an expert to testify on the defendant's behalf. Moreover, the defendant has failed to show that he was prejudiced by the trial court's ruling. He has not demonstrated that had a continuance been granted, he would have hired an expert to rebut Agent Stewart's conclusion that the defendant was manufacturing methamphetamine and that the defendant was not manufacturing it for personal use. The defendant did not introduce any additional evidence at the hearing on the motion for new trial to support a showing of prejudice. He is not entitled to relief.

### III. MOTION TO SUPPRESS EVIDENCE

The defendant contends that the trial court erred by allowing photographs of and testimony about equipment and chemicals found at the campsite because the evidence was destroyed before the defense got to inspect or test it. He contends that pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), in which our supreme court stated that the prosecution has a general duty to preserve evidence, the trial court should have dismissed the case or instructed the jury that the missing evidence may have had exculpatory value. The state claims that the defendant is not entitled to relief because his inability to inspect or test the evidence did not result from bad faith or negligence by the prosecution. We conclude that the trial court did not err by allowing into evidence photographs and testimony about the equipment and chemicals.

On the morning of trial, the defense filed a Motion to Suppress and Exclude State's Evidence. According to the motion, the state "by destroying the physical evidence, has effectively deprived the defendant of his right to confront the evidence the Government will introduce . . . ."

The defense requested the trial court "to suppress and exclude from evidence any items not physically before the jury for its inspection, and to stay the State from mentioning through any witness the existence of any item not before the jury." Just before trial, the trial court held a hearing on the motion. The trial court overruled the defense, holding that the defense had known for a long time that the evidence had been destroyed and had waited too long to file its motion.

Pursuant to Rule 12(b)(3), Tenn. R. Crim. P., motions to suppress evidence must be raised "prior to trial," which means sometime earlier than the day of the trial. State v. Hamilton, 628 S.W.2d 742, 744 (Tenn. Crim. App. 1981). The failure to pursue a motion to suppress "prior to trial" constitutes waiver unless good cause is shown for the failure to move for suppression in a timely manner. Tenn. R. Crim. P. 12(f); Hamilton, 628 S.W.2d at 744; Davidson, 606 S.W.2d 293, 295 (Tenn. Crim. App. 1980). Obviously, the defendant knew well before trial that virtually all of the physical evidence collected in this case was unavailable and that only photographs of the evidence existed. However, he has provided no explanation to the trial court or this court as to why he waited until the morning of trial to file a motion to suppress the photographs or testimony. Therefore, we conclude that the trial court did not err by ruling that the defendant's motion to suppress and exclude evidence was untimely.

As to the defendant's claim that the trial court should have dismissed the case or instructed the jury pursuant to State v. Ferguson, we note that he made no such argument in the trial court. We conclude that the issue is waived. See T.R.A.P. 3(e).

## IV. EXPERT'S TESTIMONY

The defendant claims that the trial court erred by allowing Agent Stewart to testify that the defendant was not manufacturing methamphetamine for personal use. He argues that this was an issue to be resolved by the jury, not Agent Stewart. The state does not address this argument. However, we conclude that Agent Stewart's testimony was proper.

During Agent Stewart's direct testimony, the following exchange occurred:

| [State]: | Insofar as your experience, is this type of lab, given the quantity that you've seen here today, is this type of lab consistent with -- |
|---|---|
| [Defense]: | Objection. Judge, he can testify as to what it was, but if she's going a step further now and asking him what it's consistent with, I'd ask for a jury out before we go into what she's going to go into. |
| THE COURT: | I don't know what the question is yet. |

| [Defense]: | I don't either, I anticipate. |
|---|---|
| THE COURT: | Ask the question and then I'll rule on it. |
| . . . . | |
| [State]: | Is this type of lab consistent with a lab for manufacturing purposes, for broad scale manufacturing purposes, or is it consistent with a lab for personal use? |
| [Agent Stewart:] | Again, we get a lot of what we call mom and pop labs, just for personal use, that just makes grams or ounces at a time. You don't find near this many pseudoephedrine or at least this much pseudoephedrine after it's been washed or stripped down or reduced. So I'd have to say based on the amount of pseudoephedrine he had and the way that it was found, no, that's not personal use. |

Rule 702, Tenn. R. Evid., provides that if "scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." The trial court "shall disallow [an expert's] testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." Tenn. R. Evid. 703. Moreover, testimony is not objectionable merely because it embraces an ultimate issue before the trier of fact. Tenn. R. Evid. 704. We review the admission or exclusion of evidence for an abuse of discretion. State v. Gray, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997).

Initially, we note that the defense should have stated the grounds for its objection more clearly. See Tenn. R. Evid. 103(a)(1) (providing that a timely objection for purposes of preserving the issue for appeal must state "the specific ground of objection if the specific ground was not apparent from the context"). In any event, Rule 704 states that experts may give their opinion on an ultimate issue to be decided by the jury. Agent Stewart testified that the amount of pseudoephedrine found in the red bucket was enough to make one-half pound of methamphetamine and that one pound of methamphetamine was worth $10,000 to $20,000. He also testified that most "mom and pop labs" produce only a few ounces or a few grams of the drug. In light of this testimony, we believe that Agent Stewart established a basis for his conclusion that the defendant was not making the methamphetamine for personal use and that his testimony was proper. See State v. William Ray Collier, No. M2001-00893-CCA-R3-CD, Davidson County (Tenn. Crim. App. Feb. 4, 2002), app. denied (Tenn. July 15, 2002) (police sergeant properly testified as expert witness that amount of

heroine recovered and way in which it was packaged demonstrated that defendant did not possess drug for personal use); State v. William Aubrey Trotter, Jr., No. 01C01-9701-CR-00019, Davidson County (Tenn. Crim. App. Feb. 24, 1998) (officer properly testified that amount of cocaine and cash on defendant's person indicated cocaine was not for personal use).

## V. LESSER INCLUDED OFFENSE INSTRUCTION

The defendant claims that the trial court erred by failing to instruct the jury on simple possession as a lesser included offense of manufacturing a Schedule II controlled substance. He argues that a simple possession instruction was warranted in this case because the police found no large amount of money, packaging materials, scales, or other items at the campsite to indicate that the defendant was making the methamphetamine for any reason other than personal use. The state argues that even if the trial court erred by failing to give the instruction on simple possession, the error is harmless because the trial court instructed the jury on possession of drug paraphernalia, which the jury rejected. See State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998) (holding that "by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, . . . the jury necessarily rejected all other lesser offenses"). We hold that although simple possession is a lesser included offense of manufacturing a controlled substance, an instruction was not warranted in this case.

Our supreme court has held that an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469.

As previously stated, T.C.A. § 39-17-417(a)(1) provides that it is an offense for a defendant knowingly to "[m]anufacture a controlled substance." "Manufacture" means "the production, preparation, propagation, compounding, conversion or processing of a controlled substance of natural origin, or independently by means of chemical synthesis . . . ." Simple possession is set forth in T.C.A. § 39-17-418(a), which provides that it is an offense "for a person to knowingly possess . . . a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription." Because manufacturing a controlled substance contemplates that a person also will possess it, simple possession is a lesser included offense under part (a) of the Burns test.

Nevertheless, an instruction on simple possession was not warranted in this case. A "controlled substance" is "a drug, substance, or immediate precursor in Schedules I through VI of §§ 39-17-403 – 39-17-415." T.C.A. § 39-17-402(4). However, as stated earlier, our review of those sections reveals that pseudoephedrine has not been designated as a drug, substance, or immediate precursor of amphetamine or methamphetamine. Therefore, because the defendant only possessed pseudoephedrine, which is not a controlled substance in Tennessee, he could not be guilty of simple possession, and the trial court's failure to instruct on that offense was not error.

We note that despite the state's claim, possession of drug paraphernalia is not a lesser included offense of manufacturing a controlled substance. Drug paraphernalia means

> all equipment, products and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing,

-10-

packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance as defined in [T.C.A. § 39-17-402(4)].

The elements of possession of drug paraphernalia are that (1) the defendant possessed an object, (2) the object is classified as "drug paraphernalia," and (3) the defendant intended to use the object for an illicit purpose listed in the statute. State v. Mallard, 40 S.W.3d 473, 486 (Tenn. 2001). These statutory elements are not included within the statutory elements of manufacturing a controlled substance. We conclude that possession of drug paraphernalia is not a lesser included offense of manufacturing under Burns.

## VI. "IMMEDIATE PRECURSOR" INSTRUCTION

Finally, the defendant claims that the trial court erred by failing to instruct the jury on the statutory definition of an "immediate precursor." He contends that pseudoephedrine is not recognized as an "immediate precursor" in this state and, therefore, that the jury could not have convicted him if the trial court had given the jury an "immediate precursor" instruction.

As noted in section I, the fact that pseudoephedrine is not a listed "immediate precursor" as defined in the Tennessee Drug Control Act of 1989 is irrelevant to whether the defendant was guilty of manufacturing methamphetamine. Thus, instructing the jury on the statutory definition of an "immediate precursor" would have confused and misled the jury, and the trial court did not err by failing to give an "immediate precursor" instruction.

We note that the defendant also claims that cumulative errors denied him the right to a fair trial. However, having found no errors, there is no merit to this claim.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-11-