IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 5, 2004 Session

## STATE OF TENNESSEE v. DAVID LONG

**Appeal from the Circuit Court for Henry County**
**No. 13480    Julian P. Guinn, Judge**

---

**No. W2003-02522-CCA-R3-CD  - Filed March 4, 2005**

---

The Appellant, David Long, was convicted by a Henry County jury of one count of manufacturing methamphetamine and one count of possession of drug paraphernalia.  On appeal, Long raises three issues for our review: (1) whether the search of his vehicle was proper; (2) whether the chain of custody was properly established for the introduction of three cans of starter fluid; and (3) whether the evidence is sufficient to support his conviction for manufacturing methamphetamine.  After review of the record, we find issues 1 and 2 without merit.  However, we find merit with regard to issue 3 in that the evidence presented is not sufficient to support the manufacturing conviction.  The judgment of conviction of manufacturing methamphetamine is, therefore, reversed and dismissed, and the case is remanded for a new trial for the attempted manufacturing of methamphetamine.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Jim L. Fields, Paris, Tennessee, Attorney for the Appellant, David Long.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Michael Markham, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On October 9, 2002, Bobby Stewart, a loss prevention specialist at the Wal-Mart store in Paris, observed the Appellant purchase four or five boxes of Wal-fed, a cold and allergy type medication, and then leave the store.  Stewart continued to observe the Appellant as he entered a

large yellow vehicle, drove to the other side of the Wal-Mart parking lot, parked the vehicle, and reentered the store through a different entrance. Stewart noticed that on the second visit, the Appellant was wearing a different shirt and was not wearing a hat. On this visit, the Appellant again purchased four or five boxes of Wal-fed. Stewart watched the Appellant as he left Wal-Mart, returned to his vehicle, and drove to Walgreens, which is located next to Wal-Mart. Stewart followed the Appellant into Walgreens and observed him purchase several large boxes of Sudafed. During the course of these events, Stewart informed Joey Cooper, Wal-Mart's Assistant Manager, of his suspicions. Cooper in turn relayed the information to the police. The police contacted David Archie, a deputy with the Henry County Sheriff's Department, because he was in the immediate area. Due to miscommunications in the relay of the information between Stewart and Archie, Archie was advised that "two subjects" in a large yellow Sperry Rail Service truck were "going from business to business buying large quantities of Pseudoephedrine." The yellow truck was stopped by Archie a short distance from the Walgreens store. Upon approaching the vehicle, Archie asked the Appellant if there was another person in the truck. When the Appellant told him that no one else was in the vehicle, Archie asked the Appellant for permission to verify that fact. Archie explained that the truck was so high off the ground that he could not see inside.[1] The Appellant told Archie that he could look for another person but that he could not conduct a search of the truck. The Appellant opened the door to the "box unit" and Archie "stepped up in the vehicle" to look for anyone that might be present. He immediately noticed boxes and blister packs of pseudoephedrine scattered on the floor and a can of ether starting fluid sticking out of a plastic bag.

Archie stepped down and asked the Appellant for permission to search the cab of the truck. The Appellant refused, and a canine unit was called to the scene. The drug dog "alerted," indicating the presence of drugs on the passenger side of the truck. Based upon the dog's "alerting," a vehicle search was conducted. The search yielded fourteen blister packs of Sudafedrin, six boxes of Sudafed, and approximately ten boxes of Wal-fed, with corresponding receipts dated October 9, reflecting purchases from Family Dollar, Dollar General, Kroger, Wal-Mart, and Walgreens. Archie testified that the cold remedy medications, as noted on the boxes, all contained pseudoephedrine. Also seized were three cans of starting fluid, aluminum foil, and phosphorous matches. Additionally, a briefcase containing small amounts of methamphetamine, marijuana, and diazepam, was found in the passenger seat of the truck.[2] Officers also found instructional materials for the manufacture of methamphetamine, which the proof suggested were obtained from internet sources, and a drug pipe in the briefcase. The Appellant admitted ownership of the briefcase.

---

[1] The truck was a company truck leased to Sperry Railway Service. The Appellant was employed by Sperry and was authorized to drive the truck. The prosecution witnesses provided various descriptions of the Appellant's vehicle. The vehicle was described as "a large yellow van," as a "2 or 2½ ton truck" with "a large box unit on the back of it," and a truck with a "cab compartment." The record suggests that the box compartment on the back of the truck was large enough to accommodate a person, as the unit was described as having a "seat or seats inside and a side door all the way to the rear on the driver's side." Access to the door was by means of three steps.

[2] The record does not indicate that the Appellant was ever charged with possession of the controlled substances, methamphetamine, marijuana, or diazepam.

In March 2003, a Henry County grand jury returned a two-count indictment charging the Appellant with manufacturing methamphetamine, a Schedule II controlled substance, and possession of drug paraphernalia. On March 18, 2003, the Appellant filed a motion to suppress any statements or evidence resulting from the search of his vehicle, asserting that the search was unconstitutional. The motion was denied after a hearing. On July 18, 2003, the Appellant filed a second motion to suppress three cans of starting fluid found in the truck on the grounds that the evidence had been altered. This motion was also denied.

After a jury trial, the Appellant was convicted as charged in both counts of the indictment. On September 4, 2003, the Appellant received a three-year split confinement sentence for the manufacturing of methamphetamine, with one year to be served in confinement and the remainder to be served on supervised probation. This sentence was ordered to be served concurrently with the eleven month and twenty-nine day sentence imposed by the trial court for possession of drug paraphernalia.[3] The Appellant's motion for new trial was denied on September 17, 2003, with this appeal following.

**Analysis**

On appeal, the Appellant raises three issues for our review: (1) whether the search of the Appellant's vehicle was rendered invalid because Deputy Archie exceeded the scope of the permission granted; (2) whether the evidence is sufficient to support a conviction for manufacturing methamphetamine; and (3) whether the trial court erred in admitting three cans of starting fluid because they were tainted by an officer's removal from the evidence room and subsequent use.

**I. Search**

The Appellant challenges the trial court's denial of his motion to suppress his statements and the physical evidence obtained as a result of the search of his vehicle. First, he asserts that the initial stop of the vehicle was invalid because the officer lacked probable cause. Next, he argues that even if the stop was valid, the subsequent search of the vehicle was illegal.

A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *see also State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* However, this court reviews the trial court's application of the law to the facts under a *de novo* standard of review without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). Contrary to the Appellant's assertion, probable cause is not required

---

[3]The Appellant does not challenge his conviction for possession of drug paraphernalia.

for a police officer to make a limited stop to investigate suspected criminal activity. In order to stop a vehicle, a law enforcement officer must have either probable cause or reasonable suspicion supported by specific and articulable facts to believe that an offense has been or is about to be committed. *Randolph*, 74 S.W.3d at 334. In determining whether reasonable suspicion existed for the stop, a court must consider the totality of the circumstances. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Additionally, the court must consider any rational inferences and deductions that a trained officer may draw from those circumstances. *Id.* Objective standards apply rather than the subjective beliefs of the officers making the stop. *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The Appellant argues that because it is not illegal for a person to purchase or possess Sudafed or similar cold type remedies, the police were without "probable cause" to stop and to search his vehicle. After review, we conclude that there was no error in the trial court's ruling that reasonable suspicion supported by specific and articulable facts existed to stop the Appellant's vehicle. The Appellant was observed buying large quantities of Wal-fed in a suspicious manner, entering the Wal-Mart twice, and disguising his appearance. Additionally, Stewart followed the Appellant to Walgreens where he purchased Sudafed. It is common knowledge in the law enforcement community that large quantities of Sudafed and related cold medicines are used in the manufacture of methamphetamine. Police were informed of the Appellant's activities and that he was driving a large truck with Sperry Rail Service imprinted on the side. Deputy Archie saw the Appellant, in a vehicle matching the given description, exit the Walgreens' parking lot. Under the totality of the circumstances, Deputy Archie had a reasonable suspicion, supported by specific and articulable facts, that illegal activity was taking place or about to take place.

Next, the Appellant contends that the actual search of his vehicle was invalid because Deputy Archie "exceeded [his] limited permission to 'look into the vehicle'" for the purpose of verifying that a second individual was not present. He argues that his consent in permitting the Deputy to search and verify his erroneous assumption that a second person was present did not give the police the authority to initiate a full-scale search without first arresting the Appellant or obtaining a search warrant. We disagree.

It is true that under both the federal and state constitutions, warrantless searches are presumed unreasonable, and evidence obtained from such a seizure should be suppressed unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). As we previously concluded, the investigative stop of the Appellant's vehicle was warranted. From the report given, Archie was under the assumption that a second individual was in the vehicle, and he asked the Appellant for permission to verify that no one else was present for safety concerns. Although he denied a general search of the vehicle, the Appellant did give express permission to verify that a second person was not present. The Appellant argues that the Deputy exceeded the

scope of this consent because he "did not merely look into the vehicle; he went inside and started looking around." The record does not support this assertion. Archie testified that he could not see into the large truck from the ground so he "stepped up on the rear of this vehicle . . . There is a side door all the way to the rear of the driver's side. [The Appellant] opened the door for me. I stepped up, I think there is like three steps, stepped up in the vehicle, looked for anyone that might be in the vehicle." There is no proof that Archie actually entered the compartment any farther than was necessary to verify that no other person was present. Accordingly, we conclude that Archie's search did not exceed the permissive scope of the consent given by the Appellant.

While Archie was verifying that a second individual was not present, in plain view, he "noticed that on the floor there was Sudafedrine scattered out of a bag and I could see an ether can sticking up in the corner." Thus, the plain view exception to the warrant requirement would apply because (1) the objects were in plain view, (2) Archie had a right to be in position for the view, (3) the object was discovered inadvertently, and (4) the incriminating nature of the object was immediately apparent. *See State v. Horner*, 605 S.W.2d 835, 836 (Tenn. Crim. App. 1980).

Additionally, after the Appellant refused consent to search the cab's interior, Deputy Archie requested a canine unit for further detection of drugs. A canine sweep does not constitute a search under the Fourth Amendment and, therefore, requires neither probable cause nor reasonable suspicion. *Illinois v. Roy I. Caballes*, ___ U.S. ___, 125 S. Ct. 834, 838 (2005); *State v. England*, 19 S.W.3d 762, 767 (Tenn. 2000). Archie testified that after a brief detention, as the canine officer was already en route to the scene, the dog "alerted" to the presence of drugs. At this point, probable cause existed to search the vehicle. *See England*, 19 S.W.3d at 768. Accordingly, we find this issue to be without merit.

## II. Admission of Starter Fluid Cans

As his second issue, the Appellant asserts that the trial court erred in admitting into evidence the three cans of starting fluid found in the Appellant's truck.[4] He contends that the evidence was tainted by the State's failure to establish a proper chain of custody and, further, that the impact of the admission affected the outcome of the case, asserting that he would have "at most been found guilty of misdemeanor possession of drug paraphernalia."

The proof presented established that Deputy Archie properly collected and tagged the three cans before checking them into the evidence room. However, the cans were later checked out to Investigator Ronald Acre, with the Henry County Sheriff's Department, who used two of the cans to clean the carburetor on his boat motor. The empty cans were then returned to the evidence room at the Henry County Sheriff's Department. At trial, Archie identified the cans as the ones he found in the Appellant's vehicle.

---

[4]Although generally referred to as starter fluid, the testimony at trial minimally established that it is the chemical reagent, ether, which is contained in starter fluid, that is used in the manufacturing of methamphetamine.

It is well-established that before physical evidence may be introduced, the party offering the evidence must produce a witness who is able to identify the evidence or establish an unbroken chain of custody. *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000) (citing *State v. Holbrooks*, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998)). The purpose of the chain of custody requirement is "to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." *Id.* (citing *State v. Braden*, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). However, the party is not required to prove the identity of the physical evidence to an absolute certainty, nor is the party required to exclude all possibilities of tampering. *State v. Holloman*, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992). The identification or chain of custody is sufficient if the facts establish a reasonable assurance of the identity of the evidence and its integrity. *State v. Davis*, 141 S.W.3d 600, 630 (Tenn. 2004) (citing *Scott*, 33 S.W.3d at 760; *Holbrooks*, 983 S.W2d at 701). The question of whether the chain of custody has been sufficiently established by the proof rests within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *Holloman*, 835 S.W.2d at 46. We conclude that no abuse of discretion occurred; therefore, this issue is without merit.

## III. Sufficiency of the Evidence

The Appellant challenges the sufficiency of the evidence with regard to his conviction for manufacturing methamphetamine, a Schedule II controlled substance. Specifically, he asserts that the State failed to establish that he was "manufacturing" the drug based upon the definition of the term.

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

The Appellant was convicted of manufacturing a Schedule II controlled substance in violation of Tennessee Code Annotated section 39-17-417(a)(1) (2003), which states that it is a crime for a person knowingly to manufacture a controlled substance. As provided by Tennessee Code Annotated section 39-17-408(d)(2) (2003), methamphetamine is a Schedule II controlled substance. "Manufacture" is defined as the "production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that

"manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use . . . ." Tenn. Code Ann. § 39-17-402(14) (2003).

Clearly, from the record before us, there is no proof which remotely suggests that the Appellant was "propagating," *i.e.*, growing or naturally reproducing, any controlled substances. At trial, Archie admitted that he did not smell ether or ammonia at the scene or see any lab equipment utilized in the manufacturing of methamphetamine in the truck. Moreover, the record fails to establish any evidence of production, compounding, converting, processing, or extraction of any controlled substance. Indeed, none of the cold medicines had been removed from the blister packs or boxes in which they had been purchased.

The facts relevant to manufacturing establish that the Appellant was in possession of a large quantity of cold remedy medications containing pseudoephedrine, three cans of starting fluid, recipes for manufacturing methamphetamine, phosphorous matches, and a small quantity of methamphetamine.[5] The Appellant asserts that there was no evidence whatsoever that he had begun the process of manufacturing. He concedes that while he "may have fully intended to manufacture a controlled substance at some future date," he was not manufacturing when arrested.

The State relies upon *State v. Barton Derek Grande*, No. W2002-01893-CCA-R3-CD (Tenn. Crim. App. at Jackson, Sept. 2, 2003), for the proposition that the evidence is sufficient to support the conviction if a defendant is in possession of the necessary ingredients for manufacturing methamphetamine in addition to the finished product. We find this reliance misplaced based upon the facts of the case. In *Grande*, the defendant was found in a car from which a strong odor, consistent with the manufacturing of methamphetamine, was emanating. Inside the trunk, officers found ether, lithium batteries, sulfuric acid, bags of pseudoephedrine in powder form, pseudoephedrine in tablet form, a propane cylinder, tubing, jars containing an ether and anhydrous ammonia mix, and a quantity of methamphetamine.

The facts in the present case are clearly distinguishable. The conduct prohibited by the statute is that of "manufacturing." From the facts before us, we cannot conclude that the Appellant did more than possess some, but not all, of the ingredients necessary for the manufacture of methamphetamine. Possession is not equivalent to manufacturing. Because we conclude that the evidence is legally insufficient to establish the essential elements of manufacturing beyond a reasonable doubt, the conviction is reversed and dismissed.

Notwithstanding dismissal of the indicted charge, we note that the transcript of the evidence indicates that the Appellant was also found guilty by the jury of the lesser offense of possession of

---

[5]The deputy described the aluminum foil and pipe as items used in the ingestion of drugs.

-7-

methamphetamine, a class A misdemeanor.[6]  Typically, this fact would require a remand for entry of a judgment on the jury's guilty verdict for possession of methamphetamine.  We conclude, however, under the facts of this case, that a conviction for possession of methamphetamine is not warranted.

Because manufacturing a controlled substance contemplates that a person also will possess a controlled substance, simple possession is a lesser included offense under part (a) of the test established in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999); *State v. Bobby Blair*, 145 S.W.3d 633, 643 (Tenn. Crim. App. 2004).  In this case the greater or indicted offense charged the Appellant with manufacturing a controlled substance.  A "controlled substance" is a "drug, substance, or immediate precursor in Schedules I through VI of §§ 39-17-403 [thru] 39-17-415." Tenn. Code Ann. § 39-17-402(4).  The State's prosecution for manufacturing was based upon its theory that the Appellant was in possession of pseudoephedrine.  Pseudoephedrine is not listed as an "immediate precursor" to methamphetamine as defined in the *Tennessee Drug Control Act of 1989.  See* Tenn. Code Ann. § 39-17-408(f) (listing only phenylacetone as an "immediate precursor").  *Blair*, 145 S.W.3d at 639.  Because for purposes of the lesser included offense, the Appellant possessed only pseudoephedrine, which is not a listed precursor and is thus not a controlled substance in Tennessee, he could not be guilty of possession.[7]  *Id.* at 643.

Although we have concluded that the Appellant's conduct did not culminate in the crime of manufacturing methamphetamine as defined by statute, we nonetheless hold that a submissible case of attempted manufacturing of methamphetamine has been established by the proof.  Our law provides that a person commits a criminal attempt when that person, acting with the requisite mental state, "acts with intent to complete a course of action or cause a result that would constitute the offense under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).  Accordingly, we remand for a new trial for criminal attempt to manufacture methamphetamine.

---

[6] The record reflects that a jury instruction bench conference was held, and the trial court informed the State and defense counsel that it was submitting the lesser included charge of simple possession to the jury.  Upon return of the jury following deliberations, the trial court announced, "You have passed back to me the special verdict form indicating as to Count 1 that you find the Defendant guilty of both the primary offense and the lesser included."

[7] As previously noted, although the proof established that the Appellant possessed a small amount of methamphetamine, he was not charged with its possession.

Review of this issue was unnecessary with respect to the Appellant's conviction for manufacturing because we concluded that the convicting evidence failed to establish manufacturing activity.

## CONCLUSION

Based upon the foregoing, the Appellant's conviction for manufacturing methamphetamine is reversed and dismissed, and this case is remanded for trial for attempted manufacturing of methamphetamine.

_____
DAVID G. HAYES, JUDGE